Ronald J. PAGENKOPF,
Appellant/Cross–
Appellee,

v.

CHATHAM ELECTRIC, INC., Hugh Dil-
beck, individually and d/b/a Bear Body
Works, Appellees/Cross–Appellants.

Hugh Dilbeck, individually and
d/b/a Bear Body Works, Cross–
Appellant/Cross–Appellee,

v.

Ronald Pagenkopf and Chatham Electric,
Inc., Cross–Appellees/Cross–
Appellants.

Chatham Electric, Inc., Cross–
Appellant/Cross–Appellee,

v.

Ronald J. Pagenkopf, Cross–
Appellee/Cross–
Appellant.

Nos. S–11580, S–11729, S–11739.

Supreme Court of Alaska.

Aug. 24, 2007.

Gregory W. Lessmeier and Michael L. Lessmeier, Lessmeier & Winters, Juneau, for Appellant/Cross-Appellee/Cross-Appellant Pagenkopf.

R.N. Sutliff, Anchorage, for Appellee/Cross-Appellant/Cross-Appellee Dilbeck.

Anthony M. Sholty, Faulkner Banfield, P.C., Juneau, for Appellee/Cross-Appellant/Cross-Appellee Chatham Electric, Inc.

Before: BRYNER, Chief Justice, MATTHEWS, EASTAUGH, and FABE, Justices.

### OPINION

BRYNER, Chief Justice.

## I. INTRODUCTION

Nick Goddard, an employee of Chatham Electric, Inc., opened an overhead garage door while on a job at Hugh Dilbeck's auto body shop in Juneau. The opening door knocked Ronald Pagenkopf off a ladder, severely injuring him. Pagenkopf sued Goddard and Chatham Electric (collectively "Chatham"). Chatham filed a third-party complaint against Dilbeck. After Pagenkopf rejected a pretrial offer of judgment from Chatham, a jury awarded Pagenkopf damages against Chatham and Dilbeck. The total award exceeded Chatham's pretrial offer, but Chatham's share of the damages fell well below the offer. The superior court awarded attorney's fees to Chatham under Alaska Civil Rule 68 because Pagenkopf won less from Chatham at trial than he would have received under Chatham's pretrial offer. All parties appeal. Pagenkopf asserts that Chatham's offer of judgment was too uncertain to support an award under Rule 68; he also contests the starting date for prejudgment interest to be paid by Dilbeck. We hold that the pretrial offer created apportionment difficulties that made it an invalid Rule 68 offer and that Dilbeck should be required to pay prejudgment interest from the date he first knew that a claim against him was likely to be filed. Chatham challenges the accuracy of several monetary adjustments incorporated in the final judgment. We find these points moot and decline to decide them because our disposition of other points will require a new judgment to be entered on remand. Dilbeck contends that a jury instruction improperly required the jury to apply negligence per se to decide if he was at fault. We conclude that the challenged instruction did not apply negligence per se or otherwise prejudice Dilbeck.

## II. FACTS AND PROCEEDINGS

On February 24, 2001, Nick Goddard, an employee of Chatham Electric, Inc., was working at the request of Hugh Dilbeck on a control panel for a paint booth at the Bear Body Shop, an auto repair shop owned and operated by Dilbeck in Juneau. That same day Ronald Pagenkopf, a friend of Dilbeck, was helping Dilbeck install overhead fluorescent lights in the work area of the shop.

While Pagenkopf was standing on a ladder working on the lights, Goddard opened the overhead door to enter the garage. The garage door knocked Pagenkopf off his ladder, causing severe injuries. Pagenkopf filed suit against Chatham and Goddard (collectively "Chatham"). Chatham then filed a third-party suit against Dilbeck for equitable apportionment under Alaska Civil Rule 14(c) and AS 09.17.080.

In March 2003 Chatham offered judgment to Pagenkopf "in the total amount of $525,000 in complete satisfaction of plaintiff's claims

against [Chatham] in this matter."[1] Although Chatham's offer did not mention Chatham's third-party complaint against Dilbeck, Dilbeck's insurance carrier had evidently agreed to contribute $150,000 toward the amount Chatham offered. After contacting Dilbeck and learning of his undisclosed participation in Chatham's offer, Pagenkopf passed up the offer and the case proceeded to trial.

The jury found that Pagenkopf's damages totaled $698,800 and that Pagenkopf, Chatham, and Dilbeck all shared in the fault; the verdict allocated twenty-two percent of the fault to Pagenkopf, twenty-eight percent to Chatham, and fifty percent to Dilbeck. Chatham and Dilbeck's combined seventy-eight percent share of the damages gave Pagenkopf a net verdict for damages totaling $545,064—$195,664 representing Chatham's twenty-eight percent proportionate share of the fault and $349,400 representing Dilbeck's fifty-percent share.

Based on this verdict, Chatham and Pagenkopf filed several prejudgment motions. Chatham moved for partial attorney's fees and costs under Civil Rule 68, arguing that it was the prevailing party under Rule 68 because its pretrial offer substantially exceeded the amount of the judgment Pagenkopf recovered against Chatham at trial. After denying Pagenkopf's request to compare the pretrial offer to the entire amount the jury awarded against Chatham and Dilbeck—not just Chatham's proportionate share of the award—the court declared Chatham to be the prevailing party and directed Pagenkopf to pay Chatham's post-offer costs and attorney's fees, an amount totaling more than $50,000.[2]

Chatham also moved under AS 09.17.070 to reduce Pagenkopf's judgment by amounts that Pagenkopf had received from his health insurance policy. The superior court denied this motion, ruling that applying AS 09.17.070 would not actually reduce Pagenkopf's judgment because his attorney's fees and payments for the insurance exceeded the amount of the insurance benefits he received.

Pagenkopf separately moved for an award of prejudgment interest against Dilbeck, contending that the interest should be calculated from the date Dilbeck and his insurer first received notice of a potential claim—several days after the February 24, 2001 accident. The trial court granted Pagenkopf's motion for pretrial interest but ordered the interest to run from the date Dilbeck received service of Chatham's third-party complaint—April 2, 2002.

Pagenkopf, Dilbeck, and Chatham now appeal, challenging various aspects of the final judgment.

## III. DISCUSSION

### A. Rule 68 Claims

Pagenkopf challenges the superior court's order awarding attorney's fees to Chatham under Civil Rule 68. Rule 68 allows a party to make an offer of judgment "[a]t any time more than 10 days before the trial begins."[3] If the judgment finally rendered is at least five percent less favorable to the offeree than the offer, the rule provides that the offeree "shall pay all costs as allowed under the Civil Rules and shall pay [a percentage of the] reasonable actual attorney fees incurred by the offeror from the date the offer was made."[4]

Here, Chatham unsuccessfully offered Pagenkopf $525,000 before trial in complete satisfaction of his claims against Chatham:

> Pursuant to Alaska Civil Rule 68 and AS 09.30.065, defendants Chatham Electric, Inc. and Nick Goddard offer to allow judgment in favor of the plaintiff in the total amount of $525,000 in complete satisfaction of plaintiff's claims against Chatham Electric and Nick Goddard in this matter.

---

**1.** Chatham actually made two identical offers of judgment in March 2003—one on March 11 and the other on March 28. Because the second offer simply renewed the first, we refer to them as a single offer.

**2.** The trial court also denied Pagenkopf's request to allocate part of Chatham's costs to Dilbeck for purposes of applying Rule 68. This ruling did not affect the court's prevailing-party determination.

**3.** Alaska R. Civ. P. 68(a).

**4.** Alaska R. Civ. P. 68(b).

This amount offered includes all prejudgment interest, attorney's fees and costs incurred to the date of this offer to which the plaintiff may be entitled under Alaska law. Nothing in this offer should be deemed an admission.

The jury found Chatham and Dilbeck liable for damages totaling $545,064, allocating $195,664 of that amount to Chatham and $349,400 to Dilbeck. The superior court compared Chatham's $195,664 share of the total award to its pretrial offer and determined that the jury's award was more than five percent less favorable to Pagenkopf than Chatham's offer. Accordingly, the court found Chatham to be the prevailing party under Rule 68 and ordered Pagenkopf to pay Chatham's post-offer costs and fees.

Pagenkopf argues that the superior court mistakenly compared Chatham's pretrial offer to its share of the jury's total award to Pagenkopf. He maintains that the proposed settlement with Chatham would have eliminated Chatham's third-party claim against Dilbeck; because he had claimed all of his damages in his complaint against Chatham and had never directly sued Dilbeck, Pagenkopf further maintains that dismissal of the third-party complaint would have left him with no claim against Dilbeck. Since the deadline for amending his pleadings had passed by the time Chatham offered to settle, Pagenkopf points out, he had no further right to file a direct claim against Dilbeck. In Pagenkopf's view, then, Chatham's pretrial offer of judgment effectively asked him to resolve his entire claim, not just Chatham's share of the liability. He argues that, under these circumstances, the superior court should have compared the pretrial offer to his total award from the jury—an amount that exceeded the pretrial offer and thus failed to justify an award of fees under Rule 68.

Alternatively, Pagenkopf insists that Chatham's offer of judgment was too ambiguous to support an award under Rule 68. Given Chatham's silence concerning the effect its offer might have had on the third-party claim against Dilbeck, Pagenkopf contends that the offer generated too much uncertainty to support Chatham's motion for Rule 68 fees.

In response, Chatham defends the superior court's Rule 68 award. It insists that its pretrial offer did not preclude Pagenkopf from pursuing a direct claim against Dilbeck, that it met all the requirements of Rule 68, and that it unambiguously sought to resolve only Pagenkopf's liability claims against Chatham.

We have previously observed that " '[a]n offer of judgment and acceptance thereof is a contract.' "[5] We have also adopted the view that "[t]he interpretation of a contract is a question of law to which we apply our independent judgment."[6] The interpretation of Rule 68 also presents questions of law that we subject to independent review.[7] In determining whether a particular offer complies with Rule 68, "we must view the offer's terms as a reasonable offeree would have understood them at the time the offer was made."[8]

Here, Pagenkopf claims that Chatham's offer suffered from impermissible ambiguity; he also asserts that the proposed settlement raised apportionment problems by affecting Chatham's third-party claim against Dilbeck. In applying Rule 68, we have consistently emphasized that an enforceable offer must be unambiguous:

One of the protections afforded by the Civil Rule 68 procedure is that the offer of judgment must be definite. This protection is designed to avoid post-trial litigation concerning the meaning of the offer. In keeping with this purpose, we have recognized that, to comply with Rule 68, an offer of judgment must specify a definite

**5.** *Jaso v. McCarthy*, 923 P.2d 795, 801 (Alaska 1996) (quoting *Davis v. Chism*, 513 P.2d 475, 481 (Alaska 1973)).

**6.** *Id.* (citing *Alaska Energy Auth. v. Fairmont Ins. Co.*, 845 P.2d 420, 421 (Alaska 1993)).

**7.** *Id.* (citing *Toney v. Fairbanks N. Star Borough Sch. Dist. Bd. of Educ.*, 881 P.2d 1112, 1114 (Alaska 1994)).

**8.** *Thomann v. Fouse*, 93 P.3d 1048, 1050 (Alaska 2004) (citing *Bayly, Martin & Fay, Inc. of Alaska v. Arctic Auto Rental, Inc.*, 517 P.2d 1406, 1407 (Alaska 1974)).

sum and must be unconditional. Because this requirement basically concerns the specificity of the offer rather than its communication of a monetary amount, however, we have recognized that nonmonetary provisions in an offer of judgment can also be valid, so long as they are unambiguous and unconditional. [9]

In *John's Heating Service v. Lamb* we described a specific, two-factor approach for determining whether pretrial offers are enforceable under Rule 68 in cases involving offers to or from multiple parties.[10] The first factor requires the offer to be unambiguous in the sense that it includes " 'all the relationships among the parties and their conflicting claims.' " [11] In other words, the offer must indicate that " 'all claims between the parties would be resolved if the offer were accepted.' " [12] The second factor requires the court to consider whether the offer presents any "apportionment difficulties." [13]

With this framework in mind, we consider whether the offer disputed here could support an award under Rule 68.

### 1. Ambiguity

In asserting that Chatham's offer of judgment was ambiguous, Pagenkopf contends that Chatham failed to clarify the consequences of accepting its offer. Pagenkopf focuses his theory of ambiguity on the circumstances surrounding Chatham's offer rather than on the offer itself. Because Dilbeck evidently agreed to contribute $150,000 to Chatham's settlement payment, Pagenkopf claims, the offer of judgment, although nominally extended only by Chatham, seems to have been a joint offer by Dilbeck and Chatham.

According to Pagenkopf, this ambiguity created a dilemma: because his complaint asserted a claim only against Chatham and, in turn, Dilbeck's liability turned entirely on Chatham's third-party complaint for equitable apportionment, Pagenkopf had no way of ascertaining what effect Chatham's offer might have on Dilbeck's potential liability. Pagenkopf points out that after Chatham extended its offer, Dilbeck acknowledged his agreement to contribute to the proposed settlement payment; and Chatham did not deny the agreement. Pagenkopf insists that, given the offer's silence on this point, the uncertainty surrounding Chatham's unexplained arrangement with Dilbeck made its offer ambiguous, precluding the court from using the offer as a basis for Rule 68 fees. If he had accepted Chatham's offer, Pagenkopf reasons, Dilbeck would surely have argued that the settlement with Chatham resolved its equitable apportionment claim as well, even though the offer made no mention of the third-party claim.

We disagree with Pagenkopf's theory of ambiguity. The theory is flawed because it relies on uncertain circumstances external to the offer that concern the offer's collateral effects rather than the meaning of its terms. As we explain further below, the uncertainty surrounding Dilbeck's apparent side-agreement with Chatham creates apportionment problems that implicate the second part of the *John's Heating* test; but this uncertainty does not make the offer itself ambiguous.

The terms of Chatham's offer are definite and unequivocal. By "offer[ing] to allow judgment in favor of the plaintiff in the total amount of $525,000 in complete satisfaction of plaintiff's claims against Chatham Electric and Nick Goddard in this matter," Chatham's offer unequivocally proposed to resolve only the portion of damages that Pagenkopf was entitled to recover from Chatham. Under Alaska law, Pagenkopf could recover damages from Chatham only to the extent of Chatham's proportionate share of the fault.[14] Chatham's proposal thus met the threshold criteria for an unambiguous offer: "[T]o comply with Rule 68, an offer of

---

9. *Id.* (internal quotations omitted).

10. *John's Heating Serv. v. Lamb,* 46 P.3d 1024, 1042 (Alaska 2002).

11. *Id.* (quoting *Taylor Constr. Servs., Inc. v. URS Co.,* 758 P.2d 99, 102 (Alaska 1988)).

12. *Id.* at 1042 n. 85 (quoting *Taylor Constr. Servs., Inc.,* 758 P.2d at 102).

13. *Id.* at 1042.

14. *See* AS 09.17.080(a).

judgment 'must specify a definite sum and must be unconditional.' "[15] Moreover, because the offer incorporated no nonmonetary conditions, it left no room for ambiguity as to nonmonetary terms. The offer also met the first part of the *John's Heating* test governing multiple-litigant cases, since it identified the parties included in the proposed agreement and " 'clearly indicated all claims between the parties would be resolved if the offer were accepted.' "[16] In short, we conclude that Chatham's offer met all relevant criteria for an unambiguous offer.

## 2. Apportionment issues

■ Although Chatham's offer was unambiguous, it nevertheless confronted Pagenkopf with apportionment problems that placed the implications of accepting the offer in considerable doubt. As already mentioned, in *John's Heating* we adopted the position that an unapportioned pretrial offer of judgment involving multiple parties will not trigger Rule 68 if the offer creates apportionment difficulties.[17] We must initially consider whether the *John's Heating* test applies here.

The procedural setting in *John's Heating* differed from the situation at issue in this case. In *John's Heating,* a married couple, the Lambs, sued John's Heating Service for personal injuries caused by negligent services performed by John's Heating.[18] Before trial, the Lambs sent John's Heating an unapportioned joint offer of judgment for $750,000; after John's Heating failed to accept the offer, the jury awarded damages to the Lambs exceeding the pretrial offer, and the trial court applied Rule 68.[19] On appeal, John's Heating challenged this ruling, citing *Brinkerhoff v. Swearingen Aviation Corp.*[20]

"for the proposition that joint offers of judgment present apportionment issues that make them inappropriate for the penalty provision of Civil Rule 68."[21] We distinguished the Lambs' situation, which involved an offer made by joint offerors to a single offeree, from the one addressed in *Brinkerhoff,* which involved an unapportioned offer made by a single offeror to joint offerees.[22] We emphasized that the *Brinkerhoff* situation invariably creates problems: "Apportionment difficulties are intrinsic to cases involving unapportioned joint offers because the offerees must agree as to how proceeds are to be divided (or how the responsibility for payment should be divided when the offerees are defendants)."[23] By contrast, because we found no comparable "intrinsic" danger in the Lambs' joint offer of judgment to a single offeree, we adopted a more flexible approach that called for an individualized assessment to determine if apportionment difficulties actually existed.[24]

We drew this approach from Chief Justice Rabinowitz's dispositional but non-precedential opinion in *Taylor Construction Services, Inc. v. URS Co.*[25] Our opinion in *John's Heating* described the approach as follows:

Chief Justice Rabinowitz, writing for an equally divided court, identified two factors that should be analyzed in deciding whether a joint offer should trigger Rule 68 penalties in the context of an offer made by joint offerors to a single offeree. First, if "the offer was inclusive of all the relationships among the parties and their conflicting claims," and second, if "no apportionment difficulty existed," the unaccepted offer could trigger Rule 68 penal-

**15.** *Thomann,* 93 P.3d at 1050 (quoting *Davis v. Chism,* 513 P.2d 475, 481 (Alaska 1973)).

**16.** *John's Heating Serv.,* 46 P.3d at 1042 n. 85 (quoting *Taylor Constr. Servs., Inc.,* 758 P.2d at 102).

**17.** *Id.* at 1042.

**18.** *Id.* at 1028–29.

**19.** *Id.* at 1029–30.

**20.** *Brinkerhoff v. Swearingen Aviation Corp.,* 663 P.2d 937, 943 (Alaska 1983).

**21.** *John's Heating Serv.,* 46 P.3d at 1041–42.

**22.** *Id.* at 1042.

**23.** *Id.* at 1042.

**24.** *Id.*

**25.** *Taylor Constr. Servs., Inc. v. URS Co.,* 758 P.2d 99, 102 (Alaska 1988).

ties. We adopt the *Taylor* dispositional opinion's approach today. [26]

Applying this approach to the facts in *John's Heating*, we concluded that the Lambs' pretrial offer was a valid Rule 68 offer: "First, there is no question that the unapportioned offer was 'inclusive of all relationships among the parties and their conflicting claims.' That is, had the offer been accepted, all claims between the parties would have been resolved. Second, no apportionment difficulties existed since the offeree, John's Heating, was a single entity." [27]

The procedural situation in Pagenkopf's case differs markedly from the situation at issue in *John's Heating*. In *John's Heating* we applied *Taylor's* two-factor approach to assess the validity of an unapportioned joint offer made by two plaintiffs, a married couple, to one defendant. By contrast, the offer here came from an individual defendant, Chatham,[28] and was extended to an individual plaintiff, Pagenkopf. Nominally, then, it was not a "joint" offer purporting to resolve the rights of multiple parties; yet functionally, the offer created apportionment difficulties involving another party, Dilbeck. The offer neglected to address Chatham's pending third-party equitable apportionment claim against Dilbeck; at the same time, Chatham had apparently failed to disclose a side-agreement calling for Dilbeck to contribute to Chatham's proposed settlement payment.

Although this procedural setting can be distinguished from the one in *John's Heating*, the offer of judgment here nonetheless raises serious concerns grounded in potential difficulties arising from the offer's effect on other parties whose share of the damages remained unapportioned. We see no reason why the approach articulated in *Taylor* and adopted in *John's Heating* should not apply in determining whether Chatham's pretrial settlement offer was a valid Rule 68 offer of judgment in this context.

Given Alaska's system of comparative fault, Chatham's offer raised unique apportionment difficulties. In cases involving the fault of more than one person, "unless otherwise agreed by all parties," AS 09.17.080 requires the court to instruct the jury to allocate a percentage of the total fault "to each claimant, defendant, third-party defendant, person who has been released from liability, or other person responsible for the damages." [29] We have interpreted this provision to require that "third parties must be joined for purposes of allocating fault and liability, or not at all." [30] But we have also recognized that AS 09.17.080 itself establishes "no ... procedure to allow named defendants to allocate fault to potentially responsible parties that the plaintiff ha[s] not

---

**26.** *John's Heating Serv.*, 46 P.3d at 1042 (citing *Taylor Constr. Servs., Inc.*, 758 P.2d at 102).

**27.** *Id.*

**28.** Although the offer in his case literally sought to settle Pagenkopf's claims against both Chatham Electric and its employee, Goddard, we assume for purposes of this analysis that Chatham and Goddard can be treated as an individual offeror because Chatham is vicariously liable on the basis of respondeat superior for Goddard's fault, so that Chatham's and Goddard's share of the damages would have been coextensive. We note that Pagenkopf has not asserted the existence of any apportionment difficulties arising from this aspect of the offer.

**29.** AS 09.17.080(a)(2). AS 09.17.080 provides in relevant part: ·

(a) In all actions involving fault of more than one person, including third-party defendants and persons who have settled or otherwise been released, the court, unless otherwise agreed by all parties, shall instruct the jury to answer special interrogatories or, if there is no jury, shall make findings, indicating

(1) the amount of damages each claimant would be entitled to recover if contributory fault is disregarded; and

(2) the percentage of the total fault that is allocated to each claimant, defendant, third-party defendant, person who has been released from liability, or other person responsible for the damages unless the person was identified as a potentially responsible person, the person is not a person protected from a civil action under AS 09.10.055, and the parties had a sufficient opportunity to join that person in the action but chose not to; in this paragraph, "sufficient opportunity to join" means the person is

(A) within the jurisdiction of the court;

(B) not precluded from being joined by law or court rule; and

(C) reasonably locatable.

**30.** *Alaska Gen. Alarm, Inc. v. Grinnell*, 1 P.3d 98, 104 (Alaska 2000).

sued."[31] We discussed this omission in *Benner v. Wichman* and concluded that, absent any explicit statutory procedure, defendants must be allowed to file third-party claims for equitable apportionment against other potentially responsible parties.[32]

After *Benner* was decided, its holding was implemented by a provision in Alaska's civil rules that established "the procedure that defendants could use for equitable apportionment of damages to third parties who had no direct liability to the defendant but were potentially responsible to the plaintiff."[33] Civil Rule 14(c) now explicitly provides for equitable apportionment through third-party claims. Under this provision, a defendant may "add as a third-party defendant any person whose fault may have been a cause of the damages claimed by the plaintiff"; if the third-party claim succeeds, then the court may enter judgment "in favor of the plaintiff in accordance with the third-party defendant's respective percentage of fault, regardless of whether the plaintiff has asserted a direct claim against the third-party defendant."[34]

Since promulgating Rule 14(c), we have described its equitable apportionment procedure as a cause of action that stands apart from the plaintiff's claim against the defendant—"a mechanism for spreading damages" that "bears a far closer relationship to [a traditional contribution action] than to the underlying tort action[ ]."[35] But in addition to recognizing that equitable apportionment claims are distinct actions designed to help defendants apportion liability and damages, we have also emphasized that these claims provide a vital benefit to plaintiffs by "vindicating not just the right of defendants to have damages apportioned in accordance with their fault, but the commensurate duty of responsible third parties to pay plaintiffs."[36]

Thus, Rule 14(c)'s provision directing that judgments on defendants' third-party claims are to be entered in favor of the plaintiff—rather than in favor of the named defendant—plays a vital role in harmonizing the defendant's benefit of spreading damages according to fault with the plaintiff's right to recover full proportionate payment from all responsible parties. By taking advantage of Rule 14(c)'s equitable remedy allowing damages to be apportioned fairly among third parties, the defendant in effect consents to let the apportioned damages inure directly to the plaintiff's benefit. In other words, the defendant undertakes the burden of proving the third-party claim; but the undertaking results in a twofold benefit: it provides a benefit to the defendant in the form of reduced damages reflecting the defendant's proportionate fault and to the plaintiff in the form of a third-party judgment ensuring full payment.

Chatham's offer in this case fundamentally distorted Rule 14(c)'s carefully drawn balance of benefits and burden; if accepted, the offer promised to leave Pagenkopf with a substantial apportionment burden not contemplated by the rule.

As already pointed out, Chatham's nominal offer to settle only its proportionate share of Pagenkopf's claims evidently masked an undisclosed arrangement calling for Dilbeck or Dilbeck's insurer to contribute to Chatham's settlement payment. This arrangement threatened to undercut Pagenkopf's right to a Rule 14(c) judgment for whatever amount Chatham might be able to recover against

---

31. *Id.* at 101.

32. *See Benner v. Wichman*, 874 P.2d 949, 956–57 (Alaska 1994); *see also Alaska Gen. Alarm, Inc.*, 1 P.3d at 101.

33. *Alaska Gen. Alarm, Inc.*, 1 P.3d at 101.

34. Alaska R. Civ. P. 14(c) provides:
 Equitable Apportionment. For purposes of apportioning damages under AS 09.17.080, a defendant, as a third-party plaintiff, may follow the procedure of paragraph (a) to add as a third-party defendant any person whose fault may have been a cause of the damages claimed by the plaintiff. Judgment may be entered against a third-party defendant in favor of the plaintiff in accordance with the third-party defendant's respective percentage of fault, regardless of whether the plaintiff has asserted a direct claim against the third-party defendant.

35. *Alaska Gen. Alarm, Inc.*, 1 P.3d at 105.

36. *Id.* at 102 (citing *Benner*, 874 P.2d at 956 & n. 17).

Dilbeck by pursuing the third-party complaint. As noted above, Rule 14(c)'s procedure for equitable apportionment was not designed as a mechanism to allow a named defendant like Chatham to reduce its own fair share of the damages by claiming and keeping contributions from a responsible third-party defendant like Dilbeck.

At the time of its offer, Chatham had evidently agreed upon a separate arrangement with Dilbeck or Dilbeck's insurer that might have blocked or diminished Pagenkopf's right, *under Chatham's third-party claim*, to recover a direct judgment against Dilbeck for his proportionate share of the fault. Because of this unrevealed side-agreement, Chatham's offer created apportionment problems that made it fundamentally unfair to draw a comparison between the lump sum Chatham offered before trial to the amount the jury ultimately awarded against Chatham alone. This unfairness flows from two sources: the lump sum offered by Chatham before trial carried an unknowable cost by jeopardizing Pagenkopf's procedural right to recover apportioned damages from Dilbeck under Chatham's third-party claim; and the damages awarded by the jury against Chatham for its share of the fault excluded the apportioned damages Pagenkopf gained by holding Chatham to its original decision to pursue a third-party claim.

A similar apportionment difficulty would have existed even without any side-agreement for contributions from Dilbeck or Dilbeck's insurer. As we have seen, by enabling Chatham to file an equitable apportionment claim against Dilbeck, Rule 14(c) gave Chatham the significant advantage of reducing its potential damages by apportioning fault and damages to Dilbeck; in return for this benefit, Chatham as-

sumed the burden of proving its third-party claim against Dilbeck—a quid pro quo designed to benefit Pagenkopf as well as Chatham.

Without Chatham's third-party claim, Pagenkopf's decision not to sue Dilbeck would have left the parties in agreement to exclude Dilbeck from the lawsuit. Alaska Statute 09.17.080(a) allows potentially responsible parties to be excluded from the jury's apportionment of fault and damages when "agreed by all parties" participating in the action. So if Chatham had elected at the outset not to proceed against Dilbeck, Pagenkopf could have sought to recover all of his alleged damages directly from Chatham, and Chatham would have been unable to allocate any portion of the fault or damages to anyone other than Pagenkopf.[37] In other words, Chatham was able to divide Pagenkopf's claim and shift liability to Dilbeck only by undertaking the burden of attempting to prove Dilbeck's fault in its third-party complaint.

Yet by later proposing a settlement covering only its limited portion of the freshly divided claim, Chatham created an obvious problem from Pagenkopf's perspective: the proposed settlement would have dismissed Chatham from the case completely, thus leaving no basis for pursuit of the third-party claim between Chatham and Dilbeck.[38] This offer left Pagenkopf with a lose-lose proposition. On the one hand, if he settled with Chatham for part of his losses and then sought to pursue the remainder from Dilbeck, Pagenkopf would have had to shoulder the burden of proving Dilbeck's fault—the very burden that Chatham had elected to assume in return for the opportunity of apportioning part of the damages to Dilbeck; in addition, of course, Pagenkopf would have had to assume the risk of being blocked from

**37.** *See Alaska Gen. Alarm, Inc.,* 1 P.3d at 102–04 (recognizing that Civil Rule 14(c)'s "purpose of limiting fault allocation to joined parties—more specifically, to parties potentially liable to the plaintiff, rather than 'empty chair' defendants—was to ensure that fault was accurately litigated," and holding that this purpose does not conflict with the requirements or intent of AS 09.17.080).

**38.** *See* RESTATEMENT (THIRD) OF TORTS: APPORTIONMENT OF LIABILITY § 24 cmt. e (2000) ("When a settlement is reached between the plaintiff and a potentially liable tortfeasor that releases only the settling tortfeasor, the settling tortfeasor ordinarily should be dismissed from the lawsuit or, if no suit has been initiated, not joined in any action that is subsequently brought. Dismissal occurs even if contribution claims have been made against or by the settling tortfeasor.").

pursuing a direct claim against Dilbeck because, by the time Chatham made its offer, the deadline for amending the pleadings had already passed. On the other hand, by declining to settle so that he could preserve his right to benefit from Chatham's equitable apportionment claim against Dilbeck, Pagenkopf exposed himself to the prospect of a Rule 68 claim demanding payment of Chatham's fees for performing the work of proving its claim against Dilbeck—again, the very burden that Chatham had voluntarily undertaken as a necessary cost of apportioning part of its damages to Dilbeck.

Chatham has offered no justification that would explain why it should be allowed to use Rule 68 as a lever to push a settlement that would have shifted to Pagenkopf Chatham's freely undertaken burden of proving Dilbeck's fault, while offering Pagenkopf nothing for his cost of assuming that burden. Like the prospect of an undisclosed side-agreement calling for Dilbeck to contribute to the settlement, this apportionment difficulty added incalculable costs and risks to the lump-sum payment Chatham offered for its limited share of Pagenkopf's damages. Thus, both difficulties preclude a fair comparison between the amount of the lump-sum offer and the amount Pagenkopf later recovered from Chatham at trial. By passing up the offer, Pagenkopf undeniably obtained more from Chatham than just the amount awarded against Chatham at trial.

■ We therefore conclude that these apportionment difficulties prevented Chatham's offer from triggering an award of fees and costs under Rule 68. In so ruling we do not suggest that a voluntary settlement incorporating Chatham's offer would have been invalid or unenforceable; that issue is not before us here, and we express no view on it. We hold only that for purposes of Rule 68's fee-shifting provisions, Chatham's offer did not present a fair basis for comparing the offer's monetary provision to the amount Pagenkopf actually recovered against Chatham in the judgment. Rule 68 is designed to

encourage reasonable settlements and avoid protracted litigation.[39] These aims can only be attained when the offer advanced is clear, unambiguous, and does not saddle the offeree with unfathomable complexities relating to apportionment. Because the offer in this case created unfair apportionment difficulties, we must vacate the superior court's order awarding Rule 68 costs and fees to Chatham.

## B. Judgment–Related Claims

Pagenkopf and Chatham both appeal certain issues involving calculations of the final judgment. Pagenkopf argues that he was entitled to prejudgment interest from Dilbeck from the time Dilbeck and his insurance carrier had notice of a potential claim, shortly after the accident. Chatham argues that the trial court erred in denying its post-trial motion to reduce the jury award under AS 09.17.070 by the amount of Pagenkopf's non-subrogated collateral benefits.

### 1. Pagenkopf's claim for prejudgment interest from Dilbeck

■ Determining the starting date for prejudgment interest presents a question of law that we resolve by applying our independent judgment.[40] "We review interpretations of statutes de novo, adopting the rule of law that is most persuasive in light of precedent, reason, and policy."[41]

■ Pagenkopf argues that the superior court erred in ruling that prejudgment interest should accrue from April 2, 2002, the date that the third-party complaint was served on Dilbeck. Pagenkopf claims that the court should have ordered prejudgment interest to begin much sooner—within several days of the accident, when Dilbeck and his insurer first became aware that a claim was likely to be filed. Dilbeck responds that Pagenkopf is not entitled to interest from the earlier date, since he failed to give proper written notice

39. *Cook Schuhmann & Groseclose, Inc. v. Brown & Root, Inc.,* 116 P.3d 592, 598 (Alaska 2005) (citing *Fernandes v. Portwine,* 56 P.3d 1, 8 (Alaska 2002)).

40. *Beaux v. Jacob,* 30 P.3d 90, 100 (Alaska 2001) (citations omitted).

41. *Id.* (citing *Sosa v. State,* 4 P.3d 951, 953 (Alaska 2000)).

of a claim against Dilbeck as required by AS 09.30.070(b).

The relevant portion of AS 09.30.070(b) provides:

> Except when the court finds that the parties have agreed otherwise and except as provided by AS 45.05.111(d), prejudgment interest accrues from the day process is served on the defendant or the day the defendant received written notification that an injury has occurred and that a claim may be brought against the defendant for that injury, whichever is earlier. The written notification must be of a nature that would lead a prudent person to believe that a claim will be made against the person receiving the notification, for personal injury, death, or damage to property.

 Under this provision, a potential defendant does not need to receive notice of an actual claim, but rather only needs to receive notice that a claim *may* be brought.[42] In *Lloyd's v. Fulton* we stated that AS 09.30.070(b) "establishes an objective test providing that interest begins to accrue upon written notice 'that would lead a prudent person to believe that a claim will be made against the person receiving the notification.'"[43] Direct notice from the potential claimant is not required.[44]

 In *McConkey v. Hart* we further held that, despite AS 09.30.070(b)'s express reference to written notice, the "statutory requirement of written notice may be satisfied by proof of actual notice."[45] While Dilbeck argues that there is no evidence that Pagenkopf ever intended to make a direct claim against him, AS 09.30.070(b) does not require the defendant to know the claimant's identity; it only requires knowledge that a claim "may be brought against the defendant for th[e] injury."

Dilbeck's actions in the immediate aftermath of the accident appear to show that he actually believed a claim might be brought against him.[46] He was present during the accident, realized that Pagenkopf was injured, and promptly sent his insurer a written Notice of Incident form describing the accident in a manner that ascribed negligence to Chatham. Dilbeck's insurance agent notified the insurance carrier that there was "no claim as of yet" and added that Dilbeck "believes there may not be one." At a minimum, Dilbeck's optimistic belief reveals his actual knowledge that a claim might be filed; and his hopeful subjective view that "there may not be one" would hardly preclude a finding that, objectively viewed, the information Dilbeck actually knew "would lead a prudent person to believe that a claim [would] be made against" him.[47]

The record thus contains "reliable proof" capable of supporting a finding that Dilbeck had actual notice of the potential claim soon after Pagenkopf was injured.[48] Moreover Dilbeck's ensuing communications with Chatham's insurance carrier and his later participation in mediation with Chatham and Pagenkopf would seem to establish the existence of actual notice by the time the mediation occurred—still well before he was served with Chatham's third-party complaint. Under these circumstances we hold that AS 09.30.070(b)'s written-notice requirement does not control in this case and that prejudgment interest began to accrue no later than the date of the mediation. Because an even earlier starting point is arguable,

---

42. AS 09.30.070(b).

43. *Lloyd's & Inst. of London Underwriting Cos. v. Fulton*, 2 P.3d 1199, 1210 (Alaska 2000) (quoting *Himschoot v. Shanley*, 908 P.2d 1035, 1042–43 (Alaska 1996)).

44. *Id.*

45. *McConkey v. Hart*, 930 P.2d 402, 404 (Alaska 1996) (citations omitted).

46. *Cf. Lloyd's & Inst. of London Underwriting Cos.*, 2 P.3d at 1210–11 ("[T]he only relevant question is whether a reasonable person in Lloyds's position would believe, upon receiving Walter Clark's September 22 letter and Property Marine's accompanying memo, that the Clarks would claim policy coverage for Fulton's injuries. Our review of the letter and the cover memo leads us to answer this question in the affirmative.") (footnote omitted).

47. AS 09.30.070(b).

48. *Cf. McConkey*, 930 P.2d at 404–05 (determining that written note in doctor's file "provides reliable proof of notice of [potential malpractice claim] and when it was given").

the exact date must be determined in the first instance by the superior court on remand.

### 2. Chatham's claim that the court erred in addressing Pagenkopf's nonsubrogated collateral benefits

Chatham contends that the trial court should have reduced the jury award under AS 09.17.070 by the amount of Pagenkopf's nonsubrogated collateral benefits. Chatham attributes the trial court's refusal to allow a reduction to three separate errors, complaining that the court miscalculated the proper amount of the offset by (1) using Pagenkopf's actual attorney's fees instead of the fees he would have paid if he had accepted Chatham's pretrial offer; (2) failing to reduce the amount of Pagenkopf's out-of-pocket medical expenses by his percentage of fault; and (3) including certain impermissible health club expenses in its calculation of Pagenkopf's costs. Chatham separately faults the trial court for failing to award to Chatham costs it incurred from the start of the lawsuit rather than from the date of its pretrial offer of judgment.

Because our decision vacating Chatham's Rule 68 award will require the superior court to redetermine all issues of fees and costs between Chatham and Pagenkopf and to enter a modified judgment reflecting its rulings on remand, we conclude that the various calculational errors asserted by Chatham are moot and need not be decided.

### C. Jury Instruction Claim

Dilbeck argues that the jury used an incorrect standard of negligence in finding that he acted negligently and was partly liable for Pagenkopf's injuries. Specifically, Dilbeck points to Jury Instruction 22, which referred to an Occupational Safety and Health Administration (OSHA) regulation directing that "[l]adders shall not be placed in front of doors opening toward the ladder

unless the door is blocked upon, locked or guarded." [49] Dilbeck asserts that the language of Instruction 22 referring to this directive erroneously suggested that if Dilbeck failed to comply with the OSHA regulation, his noncompliance would amount to negligence per se. [50]

Jury Instruction 22 stated:

There is a workplace safety law of the State of Alaska which provides that:

"Ladders shall not be placed in front of doors opening toward the ladder unless the door is blocked upon, locked or guarded."

Chatham Electric, Inc. claims that the owner, Hugh Dilbeck, violated this law. If you decide that it is more likely true than not true that Hugh Dilbeck violated any part of this law and that the violation was a legal cause of the accident, then you may find Hugh Dilbeck negligent.

If you decide it is more likely true than not true that Hugh Dilbeck obeyed this law, you may still find Hugh Dilbeck negligent if you decide that a reasonable person under circumstances similar to those shown by the evidence would have taken precautions in addition to those required by the statute.

Instructions on the verdict form will tell you what to do if you decide that Hugh Dilbeck was negligent.

Dilbeck acknowledges that he did not comply with the OSHA regulation. But he claims that because Pagenkopf was a volunteer and not a shop employee when the accident occurred, the regulation did not apply to Dilbeck's conduct. He argues that by referring to the regulation and suggesting that it applied to him, Instruction 22 unfairly condemned him to being found negligent per se for violating an OSHA requirement that he had no legal duty to obey.

Dilbeck also faults the instruction for including language telling the jury how to pro-

---

49. 8 Alaska Administrative Code (AAC) 61.1010(b), adopting 29 C.F.R. § 1910.25(d)(2)(iv).

50. Assessing the validity of jury instructions presents a question of law that we review de novo. *Reich v. Cominco Alaska, Inc.,* 56 P.3d 18, 25

(Alaska 2002) ("We review de novo jury instructions to which timely objection was made.") (citation omitted). "An error in jury instructions will be grounds for reversal only if it caused prejudice." *State, Dep't of Corr. v. Johnson,* 2 P.3d 56, 59 (Alaska 2000).

ceed if it found that Dilbeck had complied with the OSHA requirement. According to Dilbeck, the court mistakenly drew this language from a pattern-jury instruction dealing with the defense of compliance. Dilbeck insists that this instruction is meant to be given only in negligence per se cases where the defense of compliance is actually raised. Dilbeck emphasizes that he never asserted a defense based on compliance—he simply took the position that the OSHA regulation did not apply. Given these circumstances, Dilbeck reasons that the instruction virtually directed a verdict against him by suggesting that he had claimed compliance and was required to prove his defense. In Dilbeck's view, the instruction held him to an impossibly high standard that would have allowed the jury to absolve him of negligence only if it found "[c]ompliance with the statute *and* more."

In our view, Dilbeck misreads Instruction 22. To explain this conclusion, we begin with a brief review of our case law on negligence per se. We have recognized that the violation of a regulation or statute amounts to negligence as a matter of law—that is, negligence per se—when the statute or regulation at issue defines a standard of conduct that a reasonable person is expected to follow under the circumstances presented.[51] For purposes of determining whether a particular

law sets a standard that justifies applying negligence per se, we have adopted the four criteria set out in section 286 of the Restatement (Second) of Torts.[52] When these criteria are met, the court instructs the jury on negligence per se, informing jurors that if they find a violation, they *must* find the defendant negligent.[53]

But we have also recognized that trial courts have discretion to treat the requirements of a law as relevant evidence of negligence even if the law fails to meet the Restatement's criteria for applying negligence per se.[54] In such cases, we have held, if the trial court deems a provision of law relevant to the standard-of-care inquiry, the court is authorized to "permit the introduction of testimony showing violation as evidence of negligence" and to instruct the jury that it *may* consider a violation of the law to be evidence of negligence.[55]

The Alaska Civil Pattern Jury Instructions reflect this distinction between a regulation's use to establish negligence per se and its use as mere evidence to help the jury decide how to assess the conduct at issue under the general standard of reasonable care. Pattern Instruction 03.04A addresses the stringent requirement of negligence per se;[56] Pattern Instruction 03.04B deals with the more lenient evidence-of-negligence concept;[57] and Pattern Instruction 03.04C in-

---

**51.** *See, e.g., Bachner v. Rich,* 554 P.2d 430, 441–42 (Alaska 1976).

**52.** *Bachner,* 554 P.2d at 443 (quoting RESTATEMENT (SECOND) OF TORTS § 286 (1965)). Under the Restatement's standard, in order to serve as the standard of care, the purpose of the relevant statute must be:
> (a) to protect a class of persons which includes the one whose interest is invaded, and
> (b) to protect the particular interest which is invaded, and
> (c) to protect that interest against the kind of harm which has resulted, and
> (d) to protect that interest against the particular hazard from which the harm results.

*Id.*

**53.** *See* Alaska Civil Pattern Jury Instruction 03.04A (Apr.2006).

**54.** *Bachner,* 554 P.2d at 442.

**55.** *Id.;* Alaska Civil Pattern Jury Instruction 03.04B (Apr.2006).

**56.** Pattern Instruction 03.04A provides:

> VIOLATION OF STATUTE–NEGLIGENCE PER SE
> There is a law of the (State of Alaska) (City of _____) which provides: (Insert applicable statute, regulation, or ordinance.)
> If you decide that it is more likely true than not true that the (plaintiff) (defendant) violated any part of this law and that the violation was a legal cause of the accident, then you are required to find the (plaintiff) (defendant) negligent [unless you also find the violation was excused].

**57.** Pattern Instruction 03.04B provides:

> VIOLATION OF STATUTE–EVIDENCE OF NEGLIGENCE
> There is a law of the (State of Alaska) (City of _____) which provides: (Insert applicable statute, regulation, or ordinance.)
> If you decide it is more likely true than not true that the defendant violated any part of this law, you may consider that fact along with all the other evidence [including any evidence

forms the jury how to proceed if it finds that the defendant has complied with a law that applies to the case.[58]

As can be seen, Instruction 22, the instruction disputed here, does not use the language of Pattern Instruction 03.04A, Alaska's pattern instruction on negligence per se. Instead, by stating that if the jury found that Dilbeck had violated the OSHA regulation, "then you *may* find Hugh Dilbeck negligent," Instruction 22 mirrored the language of Pattern Instruction 03.04B—the instruction dealing with use of a law as evidence of negligence. As the superior court aptly noted in response to Dilbeck's objection to the instruction at trial, "I did not say that you shall find Hugh Dilbeck negligent, but that you may. I think that gives you the opportunity to argue."

Dilbeck does correctly observe that Instruction 22 also incorporates language from Pattern Jury Instruction 03.04C, which tells the jury how to proceed when a defendant claims to have complied with a law that applies to the case. Yet Dilbeck mistakenly suggests that Pattern Instruction 03.04C is limited to cases involving negligence per se. By its express terms, Pattern Instruction 03.04C covers all situations in which "[t]here is a law ... that applies to this case" and an

issue of compliance might be raised.[59] Nothing in the instruction's title or wording confines its use to cases involving compliance with a law that applies under the doctrine of negligence per se; and nothing in the instruction implies that it may not also be used in cases involving laws that apply under the more flexible evidence-of-negligence theory.

Nor do we read either Pattern Instruction 03.04C or Instruction 22 as given here to imply that a defense of compliance has actually been raised. Similarly, we do not read these instructions as suggesting that the defendant must bear the burden of proving compliance and must rule out other grounds for finding negligence as well. In our view, a reasonable juror reading Instruction 22 in a commonsense manner would understand it to say only that *if* the defendant claims compliance with an applicable law and the evidence establishes that claim, the jury is not precluded from finding negligence on other grounds when the evidence supports such a finding. While this aspect of Instruction 22 may have been superfluous—and arguably should have been omitted—because Dilbeck did not actually claim compliance, we fail to see any reasonable likelihood that its unnecessary inclusion resulted in the risk of substantial prejudice to Dilbeck.[60] Accordingly,

tending to show why the law was violated] in deciding whether under the circumstances of this case the defendant used reasonable care.

**58.** Pattern Instruction 03.04C provides:
COMPLIANCE WITH STATUTE
There is a law of the (State of Alaska) (City of _____) that applies to this case. It provides: (Insert applicable statute, regulation, or ordinance.)
If you decide it is more likely true than not true that the (plaintiff) (defendant) obeyed this law, you may still decide (he) (she) is negligent if you decide that a reasonably careful person under circumstances similar to those shown by the evidence would have taken precautions in addition to those required by the (statute) (ordinance).
A use note appended to Pattern Instruction 03.04C explains its purpose: "This instruction may be used in appropriate cases where it is claimed that a party was not negligent because the party complied with a statute." Alaska Civil Pattern Jury Instructions—With Use Notes and Comments 03.04C (Apr.2006).

**59.** Alaska Civil Pattern Jury Instruction 03.04C (Apr.2006).

**60.** We note that the only mention of the instruction to the jury during the parties' final arguments was made by Chatham's attorney, who argued that Dilbeck's failure to comply with the regulation supported a finding of negligence and refrained from suggesting that the violation established the existence of negligence as a matter of law:

The other instruction concerning Mr. Dilbeck is instruction number 22 and that says, "There is a workplace safety law of the State of Alaska which provides that," and I quote, "Ladders shall not be placed in front of doors opening toward the ladder unless the door is blocked upon, locked or guarded. Chatham Electric, Inc. claims the owner, Hugh Dilbeck, violated this law. If you decide that it is more likely true than not true that Hugh Dilbeck violated any part of this law and that the violation was a legal cause of the accident, then you may find Hugh Dilbeck negligent." Well, there is no question, no question whatsoever that Mr. Dilbeck didn't lock the door. And there can be no question that the law which says ladders shall not be placed in front of doors opening toward the ladder unless the door is locked, there is no question that he violated that law.

we find no reversible error in Instruction 22.[61]

## IV. CONCLUSION

For the foregoing reasons we REVERSE the award of Rule 68 attorney's fees to Chatham and also REVERSE the order establishing that prejudgment interest on Dilbeck's claim begins to run on the date Dilbeck received service of Chatham's third-party complaint. We REMAND for entry of a modified judgment conforming to our ruling on these points. We AFFIRM the superior court's judgment in all other respects.

CARPENETI, Justice, not participating.

And there can be no question, also, that this accident wouldn't have happened had he obeyed that law. If Hugh Dilbeck had done that, had he obeyed that law, none of us would be here today. So again, under instruction number 22, I suggest to you, that Mr. Dilbeck is negligent.

61. Dilbeck has consistently argued that the OSHA regulations did not apply to him in the circumstances surrounding Pagenkopf's accident. Our disposition makes it unnecessary to address the issue; we have assumed that the contention is correct without attempting to resolve the point. We also note that Dilbeck's argument challenging Instruction 22 is based on the mistaken premise that it instructed the jury to apply negligence per se. Dilbeck has not separately asserted that using the OSHA regulation as permissive evidence of negligence independently amounted to an abuse of discretion.