*Notice: This opinion is subject to correction before publication in the PACIFIC REPORTER. Readers are requested to bring errors to the attention of the Clerk of the Appellate Courts, 303 K Street, Anchorage, Alaska 99501, phone (907) 264-0608, fax (907) 264-0878, e-mail corrections@appellate.courts.state.ak.us.*

THE SUPREME COURT OF THE STATE OF ALASKA

| | | |
|---|---|---|
| NAUTILUS MARINE ENTERPRISES, INC., | ) ) | |
| | ) | Supreme Court No. S-14736 |
| Appellant, | ) ) | |
| | ) ) | Superior Court No. 3AN-07-10901 CI and 3AN-09-07869 CI (Consolidated) |
| v. | ) | |
| | ) | O P I N I O N |
| EXXON MOBIL CORPORATION and EXXON SHIPPING COMPANY, | ) ) ) | |
| | ) | No. 6942 - August 22, 2014 |
| Appellees. | ) ) | |

Appeal from the Superior Court of the State of Alaska, Third Judicial District, Anchorage, Sen K. Tan, Judge.

Appearances: Charles W. Coe, Law Office of Charles W. Coe, Anchorage, for Appellant. John Clough III, Clough & Associates, P.C., Auke Bay, and Carla J. Christofferson and Dawn Sesito, O'Melveny & Myers LLP, Los Angeles, California, for Appellee Exxon Mobil Corporation. Douglas J. Serdahely and Barat LaPorte, Patton Boggs LLP, Anchorage, for Appellees Exxon Mobil Corporation and Exxon Shipping Company.

Before: Fabe, Chief Justice, Stowers, Maassen, and Bolger, Justices. [Winfree, Justice, not participating.]

MAASSEN, Justice.

## I. INTRODUCTION

The superior court issued a declaratory judgment interpreting a settlement agreement between Nautilus Marine Enterprises (Nautilus) and Exxon,[1] then decided that Exxon was the prevailing party. Nautilus appeals the ensuing awards of attorney fees and costs as excessive. It focuses particularly on the out-of-state hourly billing rates that the superior court accepted, the number of hours billed, and the court's imposition of a fee enhancement and sanction. Nautilus also contests the court's determination of prevailing party status, its award of costs, and its failure to apportion fees and costs. We reverse and remand for the superior court to recalculate the attorney fees award based on Alaska rates and for apportionment of fees and costs; we affirm on all other issues.

## II. FACTS AND PROCEEDINGS

Exxon entered into a settlement agreement in 2006 with Nautilus and Cook Inlet Processing, resolving a lawsuit related to the 1989 Exxon Valdez oil spill. The settlement agreement reserved the question of the rate of prejudgment interest for the federal district court. U.S. District Judge H. Russel Holland ruled that interest should be 10.5% compounded annually, but the Ninth Circuit reversed, holding that Judge Holland had erroneously failed to consider extrinsic evidence of whether the parties had agreed to compound interest.

In 2009, Exxon filed a complaint against Nautilus and Cook Inlet Processing in Alaska state court, and further federal proceedings were stayed pending resolution of the state case. Exxon's complaint asked that the superior court either reform the settlement agreement to comply with what Exxon alleged to be the parties' intent (that

---

[1]  Exxon Mobil Corporation and Exxon Shipping Company were both parties to the settlement agreement and the lawsuit. We refer to them collectively as "Exxon" throughout this opinion.

interest not be compounded) or issue a declaratory judgment that the contract did not require compound interest. Exxon was represented by lawyers from two law firms: the Anchorage office of Patton Boggs LLP and the Los Angeles office of O'Melveny & Myers LLP.

Cook Inlet Processing settled with Exxon in early fall 2010.[2] A three-day trial of the remaining claims took place in November 2011. After trial the superior court found that the settlement agreement did not require Exxon to pay compound interest in all circumstances; instead, it found, "the parties intended that Judge Holland of the U.S. District Court determine both the correct rate of interest and the method of computing that interest under federal or state law." The court also found that Exxon was the prevailing party and addressed alleged misconduct by Nautilus's president, Thomas Waterer.

During his deposition, Waterer had refreshed his memory by reviewing personal telephone logs. Exxon hired a forensic expert who concluded that the logs had been altered by the addition of references to compound interest and the excision of several pages covering the period of the settlement negotiations. Exxon filed a motion shortly before trial alleging spoliation of evidence; the court deferred a ruling until after trial. The court then denied the spoliation motion on grounds that Waterer's testimony had not proven to be relevant anyway,[3] but it found that Waterer had "intentionally altered his notebooks to support [Nautilus's] position," justifying sanctions.

---

[2]    The exact date of the settlement is unclear from the record. Counsel for Nautilus was aware by September 17, 2010, that Cook Inlet Processing was settling with Exxon, but Exxon's billing records show that the settlement was still being finalized in early October.

[3]    *See Estate of Day v. Willis*, 897 P.2d 78, 81 (Alaska 1995) ("An action based on the tort of spoliation is meritless unless it can be shown that a party's underlying cause of action has been prejudiced by the spoliation.").

Exxon moved for attorney fees and submitted a cost bill. The court began its analysis under Alaska Civil Rule 82(b)(2) with the standard 30% of reasonable actual fees for a case that goes to trial and does not result in a money judgment; it then adjusted this amount upward by 5% in order to account for the time Exxon's attorneys had spent responding to Waterer's bad-faith conduct. The court found that Exxon's retention of O'Melveny & Myers was reasonable, and it awarded fees for that firm's work based on its Los Angeles billing rates. The total attorney fees awarded were $725,873. The court also awarded 60% of the fees of Exxon's forensic expert as a sanction under Civil Rule 37.

The clerk of court approved the cost bill in April 2012, including costs for computer research, copying, travel, and depositions. Nautilus moved for superior court review, which resulted in the apportionment of some of the deposition and travel costs to Cook Inlet Processing. The court entered a revised final judgment on October 12, 2012, incorporating its findings on the settlement agreement, its award of attorney fees, and its award of costs. We affirmed the merits of the court's underlying decision on Nautilus's appeal.[4] This second appeal involves the remaining issues of attorney fees and costs.

## III. STANDARDS OF REVIEW

We review for abuse of discretion both the determination of prevailing party status and the award of attorney fees.[5] "An award constitutes an abuse of discretion only

---

[4]     *Nautilus Marine Enters., Inc. v. Exxon Mobil Corp.*, 305 P.3d 309 (Alaska 2013).

[5]     *Wooten v. Hinton*, 202 P.3d 1148, 1151 (Alaska 2009) (citing *Olivit v. City & Borough of Juneau*, 171 P.3d 1137, 1142 (Alaska 2007)).

when it is manifestly unreasonable."[6]  But "[i]f the award of attorney's fees requires interpretation of Alaska Civil Rule 82, we perform an independent review."[7]  We also review for abuse of discretion the superior court's award of costs[8] and the imposition of sanctions for discovery violations.[9]

## IV.  DISCUSSION[10]

### A.  An Award Of Attorney Fees Under Rule 82 Should Be Based On Local Rates Absent Extraordinary Circumstances.

Nautilus contends that the superior court abused its discretion because its award of fees was based in part on billings of O'Melveny & Myers, Exxon's Los Angeles lawyers, at hourly rates significantly higher than those prevailing in Anchorage.[11]  We

---

[6]     *Thorstenson v. ARCO Alaska, Inc.*, 780 P.2d 371, 376 (Alaska 1989) (citing *Haskins v. Shelden*, 558 P.2d 487, 495 (Alaska 1976)).

[7]     *Alderman v. Iditarod Props., Inc.*, 32 P.3d 373, 380 (Alaska 2001).

[8]     *Kaps Transp., Inc. v. Henry*, 572 P.2d 72, 77 (Alaska 1977).

[9]     *Khalsa v. Chose*, 261 P.3d 367, 372 (Alaska 2011) (citing *Underwriters at Lloyd's London v. The Narrows*, 846 P.2d 118, 119 (Alaska 1993)).

[10]     The first issue Nautilus raises is the superior court's determination that Exxon was the prevailing party.  But Nautilus challenged this finding in its earlier appeal of the merits, in which we held that the superior court did not err in its prevailing party determination.  *Nautilus Marine Enters., Inc. v. Exxon Mobil Corp.*, 305 P.3d 309, 320 (Alaska 2013).  We decline to consider the issue again.

[11]     For example, two of Exxon's Los Angeles-based lawyers billed at hourly rates of $795 and $730, whereas two of its Anchorage-based lawyers with similar experience and responsibility billed at hourly rates of $375 and $325.  In discussing the contrast in regional rates, the superior court made note of the higher "cost of doing business and the overhead in Los Angeles."  Nautilus does not dispute that the California lawyers' rates were reasonable for the Los Angeles market, and for purposes of our discussion we assume that they were.

have not yet addressed the issue of whether fee awards can be based on out-of-state billing rates that are out of sync with Alaska's market. Nautilus urges us to adopt what it calls the "locality" or "forum" rule: that "the trial court is required to award fees based on market rates in the community in which it sits, i.e., where the action is brought." Nautilus contends that unless competent local counsel are unavailable, it is unfair to subject the non-prevailing party to a higher fee award simply because the prevailing party elected to look outside the state for representation. We find merit in Nautilus's argument.

Civil Rule 82(b)(2) requires that an award of fees be based on "the prevailing party's reasonable actual attorney's fees which were necessarily incurred." As the superior court correctly observed, this court has never expressly "deal[t] with the issue of locality in setting reasonable hourly rates" for purposes of a Rule 82 award. The superior court cited *Ihler v. Chisholm*[12] for the proposition that there are essentially two different tests for setting reasonable rates in cases involving out-of-state counsel: (1) the test urged by Nautilus here, which looks to the "fees customarily charged in the locality of the case" unless in-forum counsel was unavailable,[13] and (2) "a less stringent test of 'reasonableness,' " which asks only whether the choice of out-of-state counsel was

---

[12]     995 P.2d 439, 446 (Mont. 2000).

[13]     *See, e.g.*, *Barjon v. Dalton*, 132 F.3d 496, 501 (9th Cir. 1997) (attorney fee award based on local counsel's rates was reasonable where plaintiffs failed to show local counsel was unavailable); *Gates v. Deukmejian*, 987 F.2d 1392, 1405 (9th Cir. 1992) (out-of-forum rates may be used where local counsel is unavailable); *Davis v. Hollins Law*, ___ F. Supp.2d ___, 2014 WL 2619651, at *5 (E.D. Cal. 2014) (citing *Barjon*, 132 F.3d at 500); *In re South Dakota Microsoft Antitrust Litigation*, 707 N.W.2d 85, 104 (S.D. 2005) (placing the burden on the plaintiffs to show "a good faith effort was made to hire local . . . counsel, and that no qualified counsel was available").

reasonable under the circumstances.[14]  The Montana Supreme Court in *Ihler* held that the "reasonableness" test best reflected both the language of the relevant fee statute[15] and "the primary concern in an attorney fee case[, which] is that the fee awarded be reasonable."[16] The superior court here reached the same conclusion.

As the superior court also recognized, we observed in *Valdez Fisheries Development Association v. Froines*[17] that fixing an hourly rate for purposes of a Rule 82 award may be aided by reference to Alaska Rule of Professional Conduct 1.5, which lists "[t]he factors to be considered in determining the reasonableness of a fee."  One of the eight listed factors is "the fee customarily charged in the locality for similar legal

---

**14**      *See, e.g.*, *Arbor Hill Concerned Citizens Neighborhood Ass'n v. Cnty. of Albany Bd. of Elections*, 522 F.3d 182, 191 (2d Cir. 2008) (holding that a party wishing to use a higher out-of-district rate must show that the retention of an out-of-district attorney was reasonable under the circumstances); *Rum Creek Coal Sales, Inc. v. Caperton*, 31 F.3d 169, 175 (4th Cir. 1994) ("In circumstances where it is reasonable to retain attorneys from other communities . . . the rates in those communities may also be considered."); *Chrapliwy v. Uniroyal, Inc.*, 670 F.2d 760, 769 (7th Cir. 1982) (holding that the relevant inquiry is the reasonableness of the choice of out-of-forum counsel, but questioning the reasonableness of that choice where there was "reason to believe that services of equal quality were readily available at a lower charge"); *Standard Theatres, Inc. v. State, Dep't of Transp., Div. of Highways*, 349 N.W.2d 661,  669 (Wis. 1984) (holding that statute providing "reasonable attorneys fees" did not require local counsel, but only that choice of counsel was reasonable).

**15**      *Ihler* was a class action civil rights suit brought under 42 U.S.C. § 1983 by patients against state mental health facilities, and fees were governed by 42 U.S.C. § 1988.  *Ihler*, 995 P.2d at 442-44.  "Under § 1988, a district court may 'allow the prevailing party . . . a *reasonable* attorney's fee.' "  (emphasis added in *Ihler*).

**16**      *Id*. (quoting *Hadix v. Johnson*, 65 F.3d 532, 535 (6th Cir. 1995)).

**17**      217 P.3d 830, 833-34 (Alaska 2009).

services."[18] We noted in *Valdez Fisheries* that "[w]e have never adopted Professional Conduct Rule 1.5 as the test for calculating attorney's fee awards,"[19] as it and Rule 82 have different purposes: "The purpose of Rule 82 is to partially compensate a prevailing party for the expenses incurred in winning a case,"[20] whereas "the purpose of Professional Conduct Rule 1.5 . . . is to aid attorneys in determining an appropriate rate to charge their clients."[21] But we recognized that when the list of factors in Rule 1.5 does "have a place

---

[18]    Alaska R. Prof. Conduct 1.5(a)(3). The eight "factors to be considered in determining the reasonableness of a fee" under Professional Conduct Rule 1.5(a) are:

> (1) the time and labor required, the novelty and difficulty of the questions involved, and the skill requisite to perform the legal service properly; (2) the likelihood[] that the acceptance of the particular employment will preclude other employment by the lawyer; (3) the fee customarily charged in the locality for similar legal services; (4) the amount involved and the results obtained; (5) the time limitations imposed by the client or by the circumstances; (6) the nature and length of the professional relationship with the client; (7) the experience, reputation, and ability of the lawyer or lawyers performing the services; and (8) whether the fee is fixed or contingent.

The same eight factors are listed in the "near-identical parallel" Alaska Bar Rule 35(a), which we have also recognized "may be helpful to assess the reasonableness of counsel's requested hourly rate." *Valdez Fisheries*, 217 P.3d at 833 n.17.

[19]    *Valdez Fisheries*, 217 P.3d at 833-34.

[20]    *David S. v. Jared H.*, 308 P.3d 862, 874 (Alaska 2013) (citing *Tobeluk v. Lind*, 589 P.2d 873, 876 (Alaska 1979)).

[21]    *Valdez Fisheries*, 217 P.3d at 834.

in a court's calculation of reasonable actual fees, it is most likely in determining whether the hourly rate charged is reasonable."[22]

In evaluating Exxon's fee request, the superior court in this case began by observing that Exxon would not be entitled to an award based on the higher out-of-state rates "[h]ad the test been whether in-forum counsel was available, . . . as it is clear that Alaska counsel was more than adequate to the task of litigating a matter of contract interpretation or reformation of a contract." The superior court then summarized Exxon's rationale for employing out-of-state counsel:

> Although Patton Boggs[, Exxon's local counsel,] was involved in the *Valdez* litigation, O'Melveny was the lead counsel in the underlying Exxon Valdez litigation for over twenty years. O'Melveny was litigation counsel in the underlying case with [Nautilus] as well. It was also Mr. [John] Daum[, an O'Melveny lawyer,] who was the lead in negotiation of the settlement with [Nautilus] and in dealing with [Nautilus's lead negotiator]. Given the circumstances and the history of this case, it was reasonable for Exxon to continue the same association and to have retained O'Melveny to litigate this case.

In essence, applying a reasonableness test, the superior court found that Exxon's retention of Los Angeles counsel was justified based on one factor in the Rule 1.5(a) list of eight factors — "the nature and length of the professional relationship with the client" — and that the out-of-state rates could therefore be used as the basis for an award of fees under Rule 82.

We conclude that this was error. Parties are free to choose the lawyers who will represent them and to enter into any fee agreements consistent with the law of

---

[22] *Id.*

contracts and the rules of professional responsibility. But as for the partial reimbursement of fees under Rule 82, we hold that "the fee customarily charged in the locality for similar legal services"[23] is the basis on which awards should ordinarily be calculated, and an award based on out-of-state rates should be made only in extraordinary circumstances.[24] Especially since attorney fee awards are a usual part of any judgment in Alaska, the prospect of having to pay a Rule 82 award based on fees well in excess of those that would have been billed by in-state lawyers may deter Alaskans from seeking redress in the courts for their bona fide disputes.[25] An extraordinary circumstance that may justify departure from this general rule is the one suggested by Nautilus here: that counsel with the necessary expertise, or the necessary willingness to take the case, is not locally available.[26]

Extraordinary circumstances are not apparent in this case. As explained by the superior court, the circumstances that justified Exxon's retention of O'Melveny &

---

[23]     Alaska R. Prof. Conduct 1.5(a)(3).

[24]     *See Bywaters v. United States*, 670 F.3d 1221, 1233 (Fed. Cir. 2012) ("[W]hen plaintiffs elect to retain counsel who are located outside the forum in a jurisdiction that charges higher rates than the forum rates . . . [,] the forum rate applies absent some unusual justification for departing from it."); *Arbor Hill Concerned Citizens Neighborhood Ass'n v. Cnty. of Albany & Albany Cnty. Bd. of Elections*, 522 F.3d 182, 183-84 (2d Cir. 2008) (holding that the prevailing hourly rate in the district where the court sits is the "presumptively reasonable fee," but the court may adjust this hourly rate "to account for other case-specific variables").

[25]     *See Bozarth v. Atl. Richfield Oil Co.*, 833 P.2d 2, 4 n.3 (Alaska 1992) (recognizing that the "costs of litigation" in Alaska may "have increased to such an extent that the prospect of having to pay Rule 82 fees deters a broad spectrum of our populace from the voluntary use of our courts").

[26]     *See Gates v. Deukmejian*, 987 F.2d 1392, 1405 (9th Cir. 1992)*; In re South Dakota Microsoft Antitrust Litigation*, 707 N.W.2d 85, 104 (S.D. 2005).

Myers for the litigation with Nautilus were that "O'Melveny was the lead counsel in the underlying Exxon Valdez litigation for over twenty years"; "O'Melveny was litigation counsel in the underlying case with [Nautilus] as well"; and it was O'Melveny & Myers lawyer "Mr. Daum who was the lead in negotiation of the settlement with [Nautilus] and in dealing with [Nautilus's lead negotiator]." But as the superior court also found, the issues in this case were the general ones of contract interpretation and reformation. It is not apparent that O'Melveny & Myers's involvement in the underlying Exxon Valdez litigation was important enough to the issues *in this case* that it necessitated going outside the Alaska legal market. To the extent such experience mattered, Exxon's local counsel had it as well; Douglas Serdahely of Patton Boggs had a leadership position for the same client in the same underlying litigation. And the role of O'Melveny lawyer John Daum as lead negotiator in the settlement negotiations with Nautilus made him more obviously a witness in the trial of this case — as he was — than a preferred choice for counsel when it came to litigating the settlement.[27] In fact, it appears that Daum billed no time to this case after its initial stages; a departure from the locality rule cannot be justified by Exxon's desire to retain an out-of-state lawyer who ultimately did no significant work on the case as counsel.

In sum, we conclude that, on the facts as found by the superior court, no extraordinary circumstances — such as the unavailability of competent and willing local counsel — exist to justify a departure from the locality rule. We remand this issue to the

---

[27] *See* Alaska R. Prof. Conduct Rule 3.7 (setting out limited circumstances in which a lawyer may "act as an advocate at a trial in which the lawyer is likely to be a necessary witness").

superior court for a recalculation of the attorney fees award based on "the fee customarily charged in the locality for similar legal services."[28]

**B.      The Superior Court Did Not Abuse Its Discretion In Deciding That The Hours Billed By Exxon's Attorneys Were Reasonable.**

In addition to challenging their hourly rates, Nautilus argues that the number of hours billed by Exxon's attorneys was excessive because it included misspent, misreported, and duplicative time. Civil Rule 82(b)(2) provides that the attorney fees on which an award is based must be both reasonable and necessarily incurred. "[T]he [superior] court's assessment of fees . . . begins with the prevailing party's actual fees, but it does not end there. The reasonableness of the actual number of hours billed . . . must be separately evaluated by the court."[29] "Hours billed for activities that are not reasonably intended to advance the litigation, or hours billed for completing a task in excess of those that ought to be required to complete it, are not reasonably incurred."[30] The trial court has broad discretion in this area.[31]

Nautilus contends that Exxon's attorneys billed far more time to the case than its own attorneys did and argues that the superior court should have taken this

---

[28]      Alaska R. Prof. Conduct 1.5(a)(3).

[29]      *Valdez Fisheries Dev. Ass'n v. Froines,*, 217 P.3d 830, 834 Alaska 2009).

[30]      *Id.* at 833; *see also Demoski v. New*, 737 P.2d 780, 787 (Alaska 1987) (affirming a reduction in fees where the trial court found that an attorney had overcharged, that billings were duplicative, that much of the fees related to a claim against another party, and that counsel's failure to follow the civil rules generated excessive costs).

[31]      *Valdez Fisheries*, 217 P.3d at 833.

disparity as proof that Exxon's fees were unreasonable.[32] "A large discrepancy between the fees incurred by each side may be evidence of unreasonableness, but it is not conclusive."[33] This is because "[t]he burdens assumed by opposite sides of litigation are not necessarily equal, and it is a judgment call as to whether such a discrepancy reflects over-preparation and over-billing by one set of attorneys, or under-preparation and under-billing by the other set of attorneys."[34] In *Gamble v. Northstore Partnership*, we held that the trial court did not abuse its discretion in finding attorney fees to be reasonable even though they were double the amount billed by the other side.[35] We noted the substantial discovery practice, the five-day trial, and the fact that the trial court had reviewed itemized billing statements and "was personally aware of the quality and quantity of the [attorneys'] work."[36] The superior court in this case did not directly address the discrepancy in fees. It did have access to attorneys' itemized billing statements, as in *Gamble*; and it was "left with the impression that Exxon's attorneys . . . thoroughly investigated, researched, and followed up on every lead." It further found that Exxon's attorneys "produced high quality products and were always prepared for hearings and at

---

[32]     Nautilus claims that Exxon's fees were approximately five times its own fees; but the part of the record Nautilus cites provides no indication of the fees it incurred.

[33]     *N. Pac. Processors, Inc. v. City & Borough of Yakutat, Alaska*, 113 P.3d 575, 589 (Alaska 2005) (citing *Gamble v. Northstore P'ship*, 28 P.3d 286, 289 (Alaska 2001)).

[34]     *Gamble*, 28 P.3d at 290; *see also Kenai Lumber Co., Inc. v. LeResche*, 646 P.2d 215, 222 (Alaska 1982) (holding that a discrepancy in the parties' attorney fees did not by itself demonstrate that the higher fees were unreasonable).

[35]     28 P.3d at 289-90.

[36]     *Id.* at 290.

trial." It observed that this was "not the more economical or frugal style of litigation, but a well-funded effort" that led to success, and that "[i]t is hard to determine after the fact what contributed to the success and what might not have mattered." The court took some reassurance from the fact that Exxon, as "a large corporation," had in-house counsel monitoring the reasonableness of the litigation expenses as they were incurred. It concluded that the number of hours billed by Exxon's attorneys, "although on the high side, [fell] within the range of reasonable." This is just the sort of analysis that the trial court is "uniquely suited" to make because of its "greater knowledge of the case,"[37] and we do not see an abuse of discretion.

Nautilus also argues that the number of attorneys who worked on Exxon's case was excessive, noting that 15 of them billed time to the case, that there were several lawyers at every deposition, at trial, and working on the same motions, and that they billed for team meetings and conference calls. The superior court acknowledged that "it could be argued that there is a certain redundancy to the efforts," but it also observed that "it is often advantageous to have more than one attorney present, to assist, to consult, and to monitor the progress of the deposition or trial." Here again, "[i]t is . . . for the trial judge to determine . . . whether too many attorneys were employed,"[38] and we see no abuse of discretion in the superior court's conclusion that the number was not unreasonable.

Nautilus argues further that the fees are excessive in part because Exxon's California lawyers had to learn about Alaska law and procedure. Nautilus cites Exxon's

---

[37]     *Valdez Fisheries Dev. Ass'n v. Froines*, 217 P.3d 830, 833 (Alaska 2009).

[38]     *Integrated Res. Equity Corp. v. Fairbanks N. Star Borough*, 799 P.2d 295, 304 (Alaska 1990). *See also Valdez Fisheries*, 217 P.3d at 833 (argument that prevailing party "seeks payment for two attorneys' presence at trial, when one would have sufficed," is left to the trial court's discretion).

itemized billings, highlighting in particular the time spent researching and drafting the reformation complaint and researching spoliation. But these records do not show that Exxon's lawyers had to spend additional time on these issues because they were from outside the state. Nautilus also provides no clear support for its contention that Exxon's counsel carried out redundant research on issues such as contract interpretation that had already been researched exhaustively in the federal case.

Finally, Nautilus argues that Exxon failed to prove that all the time listed was in fact billable. Noting that much time during the day is lost due to breaks and interruptions, Nautilus asserts that "[a] ten hour day should not yield a bill for 10 hours of billable time except in limited situations such as trial or extended depositions." But one of Exxon's attorneys submitted an affidavit specifically controverting this argument, stating that "O'Melveny['s] attorneys are well aware of the difference between billable time and the actual number of hours that an attorney spends in the office; personal time was not billed to Exxon and accordingly was not included in the billing summary submitted in support of Exxon's motion." We cannot say that the superior court abused its discretion when it accepted this assurance that the submitted billings were prepared conscientiously and in good faith.

C.    The Superior Court Did Not Abuse Its Discretion When It Enhanced Attorney Fees And Awarded Expert Fees As A Sanction.

In its order on attorney fees, the superior court took into account Waterer's alteration of his telephone logs and his testimonial reliance on those alterations. The court increased attorney fees by 5% to compensate Exxon for the time spent addressing this misconduct, raising the award from the presumptively reasonable 30% to 35% of actual reasonable attorney fees. It also awarded Exxon 60% of the expert witness fees charged

by its forensic expert as a sanction under Civil Rule 37(c)(1).[39] Nautilus challenges these awards on several grounds, but none of them has merit.

Nautilus first argues that the superior court erred in enhancing fees absent a finding of bad faith or vexatiousness.[40] But the superior court did find bad faith, and it did so explicitly: "Mr. Waterer's actions do amount to bad faith." Nautilus's claim that "[t]he court did not find that there was bad faith or vexatious conduct in this case" is flatly contradicted by the court's order.

Second, Nautilus argues that the court's enhancement of both attorney fees and expert witness fees constitutes a "double sanction" or "double dipping." But the misconduct at issue required Exxon to incur both additional attorney time and the expense of a forensic expert; it was not an abuse of discretion for the court to compensate Exxon for both additional costs. Civil Rule 37(c)(1) explicitly contemplates this, authorizing sanctions "[i]n addition to requiring payment of reasonable expenses, including attorney's fees, caused by the failure [to disclose]."

Third, Nautilus argues that the court should not have awarded enhanced fees and expert costs after having found that Waterer's deposition testimony was not relevant

---

[39] Alaska Administrative Rule 7(c) generally limits the recovery of expert witness costs to "the time when the expert is employed and testifying," not to exceed $150.00 per hour. But Alaska Civil Rule 37(c)(1) allows the court to impose "appropriate sanctions" in addition to attorney fees and other "reasonable expenses" caused by a party's failure to disclose information without substantial justification or its false or misleading disclosure of information during discovery.

[40] Alaska Civil Rule 82(b)(3)(F) and (G) allows the court to vary a fee award based on "the reasonableness of the claims and defenses pursued by each side" and "vexatious or bad faith conduct." *See also Johnson v. Johnson*, 239 P.3d 393, 400 (Alaska 2010) (holding that "enhanced fees may be awarded under any of the subparagraphs of Rule 82(b)(3)").

to its decision of the case and that therefore no spoliation occurred. But there is no question that Waterer's evidence was relevant for purposes of discovery; it was simply not relevant to the court's final decision because Waterer was not a primary negotiator of the settlement agreement, and that is what ultimately mattered. This does not mean that Waterer's bad faith during discovery cannot be sanctioned. The superior court was right to expect the parties to act honestly in discovery regardless of whether their evidence would prove to be necessary to the judgment. The court did not abuse its discretion by enhancing both attorney fees and expert costs because of Waterer's misconduct.

**D.     It Was An Abuse Of Discretion Not To Apportion Fees And Costs Between Nautilus And Cook Inlet Processing.**

Nautilus argues that the superior court abused its discretion when it failed to apportion attorney fees and costs between Nautilus and Cook Inlet Processing for work that related to both. The superior court did exclude billing entries related only to Cook Inlet Processing, but it declined to exclude entries for work that clearly involved both defendants, such as "[w]here there is discovery that applies to both."[41] The effect of the superior court's order, thus, is to make Nautilus solely responsible for the attorney fees and costs that Exxon incurred in pursuing its claims against both Nautilus and Cook Inlet Processing.

Exxon counters that some apportionment occurred indirectly, in that Exxon, and the superior court, excluded $366,429.50 in block-billing (that is, billing entries that do not specify the time taken for each listed task but only give a total) where the entries included work related only to Cook Inlet Processing.[42] But excluding the time that is

---

[41]     Apparently Cook Inlet Processing responded to discovery on behalf of both defendants.

[42]     This number is derived from an Exxon attorney's affidavit, stating that the
(continued...)

clearly devoted to one defendant, no matter how rigorously done, will not accomplish the goal of apportioning the time devoted to both defendants — time that in this case included such major efforts as drafting the complaint and summary judgment pleadings.

In *Thorstenson v. ARCO Alaska, Inc.*, we held that it was an abuse of discretion for the superior court to allocate 75% of the defendant's fees to its case against the one plaintiff who stayed with the case through trial, where the superior court found that the defendant would still have incurred 75% of its attorney fees had it litigated against just one plaintiff all along.[43]  We held that "[t]o charge the last remaining plaintiff with a grossly disproportionate share of a defendant's attorney fees . . . creates perverse incentives."[44]  Instead, "[e]ach plaintiff should be charged with his proportional share of fees incurred prior to the resolution of his claim."[45]

In *Cizek v. Concerned Citizens of Eagle River Valley, Inc.*, we clarified that *Thorstenson* "did not hold that attorney's fees must *always* be equally apportioned, but rather that a remaining party may not be asked to bear an unreasonably heavier burden of the cost of litigation than a party who chooses to settle."[46]  The superior court in *Cizek* had apportioned 15% more in fees against the Cizeks than against their co-defendant, who

---

[42](...continued)
billings submitted to the court excluded block-billing totaling over $350,000, and the superior court's subtraction of another $16,429.50 based on Nautilus's objections.

[43]        780 P.2d 371, 376-77 (Alaska 1989).

[44]        *Id.* at 377.

[45]        *Id.*

[46]        71 P.3d 845, 853 (Alaska 2003) (emphasis added) (citing *Thorstenson*, 780 P.2d at 376-77).

had settled before trial.[47] We found no abuse of discretion, however, as the superior court had made specific findings that justified an unequal apportionment.[48] These findings included the facts that the settling co-defendant had made only small "active efforts" in the litigation and that " 'the bulk of active litigation efforts' were directed against the Cizeks."[49]

Exxon makes a number of arguments why an unequal apportionment is appropriate in this case, but we do not find them persuasive. First, Exxon argues that fees need not be apportioned if they would still have been necessary absent the other party. Exxon asserts that "there was no indication in *Thorstenson* that, as in this case, nearly all pre-settlement activity . . . would have been exactly the same even if the settling plaintiff had never been a party to the case." Yet in *Thorstenson*, contrary to Exxon's suggestion, the fees in dispute concerned the overlap "in the work performed in defense of each plaintiff's claim" — in other words, work that would have been exactly the same even if the settling party had never been a party to the case.[50] Following *Thorstenson*, the fact that much of the pre-settlement fees would have been incurred even if there were only one defendant supports apportionment between Nautilus and Cook Inlet Processing.[51]

---

[47]     *Id.* at 853-54.

[48]     *Id.*

[49]     *Id.* at 853.

[50]     *Thorstenson*, 780 P.2d at 376.

[51]     *Id. See also Cizek*, 71 P.3d at 853 ("The first reason for the court's unequal apportionment — that the Cizeks and Dike litigated as a unit against Concerned Citizens — actually supports an equal apportionment of fees.").

Exxon also argues that further apportionment is not required because "[a]s in *Cizek*, and in contrast to *Thorstenson*, the work in this case was back-loaded, occurring after one of the defendants (here [Cook Inlet Processing]) settled." But there is no indication that the work in *Cizek* was "back-loaded"; the Cizeks' co-defendant settled "[i]mmediately before trial."[52] The superior court's determination in *Cizek* that most of the active litigation efforts were directed against the Cizeks refers to efforts made before the settlement.[53] Exxon does not argue here that most of its pre-settlement efforts were directed against Nautilus. That Exxon had to expend significant efforts litigating against Nautilus *after* Cook Inlet Processing settled does not mean that the pre-settlement fees should not be apportioned.

Exxon finally relies on *Tenala, Ltd. v. Fowler*[54] for the proposition that "a party can recover fees from one defendant for work relating to another defendant so long as the work was necessary to prosecute the claims against the first defendant." We consider *Tenala* inapposite. The issue in that case was whether the attorney fees incurred by the plaintiff in preparing a claim she later abandoned could be included in an award against the defendant; we found no abuse of discretion in the superior court's inclusion of those fees. We noted that the abandoned claim was actually "an important component of" the quiet title action in which the plaintiff ultimately prevailed and cited *Gold Bondholders Protective Council v. Atchison, Topeka and Santa Fe Railroad Co.* for the proposition that attorney fees do not have to be apportioned "with reference to the

---

[52] *Cizek*, 71 P.3d at 848.

[53] *See id.* at 853.

[54] 993 P.2d 447 (Alaska 1999).

disposition of individual issues."[55] The question here is not whether fees should have been apportioned by issue; they clearly were not. The question, rather, is whether fees should have been apportioned among the non-prevailing parties so as to be roughly proportionate to their active involvement in the case. The answer to this question is controlled by *Thorstensen* and *Cizek*.

Given that Exxon incurred substantial attorney fees and costs for work against both defendants before Cook Inlet Processing settled, and that the superior court assessed these fees against Nautilus without providing a reason for an unequal apportionment,[56] we reverse the awards of attorney fees and costs and remand to the superior court for its further consideration of this issue.[57]

**F.  Other Than The Lack Of Apportionment, The Superior Court Did Not Err In Its Award Of Costs.**

Nautilus contests several more specific aspects of the superior court's award of costs.[58] Nautilus argues that Exxon provided inadequate itemization of its costs for

---

[55]     *Id.* at 450 (quoting *Gold Bondholders*, 658 P.2d 776, 779 (Alaska 1983)).

[56]     *Compare Thorstenson.*, 780 P.2d at 377 (holding that there was an abuse of discretion where the superior court made one plaintiff responsible for the entire overlap in fees), *with James v. State*, 815 P.2d 352, 360 (Alaska 1991) (holding that there was no abuse of discretion where "appellants were made to bear less than 2% more than their proportional share of the state's fees").

[57]     The superior court did apportion the cost of one deposition between the two defendants, since it occurred before Cook Inlet Processing's settlement and the court found that the "deposition was for the benefit of both [Nautilus] and [Cook Inlet Processing]." It is not apparent, however, that this same rationale was extended to the other costs incurred prior to the settlement, and it should have been.

[58]     Exxon argues that Nautilus did not properly appeal the court's award of costs, thereby waiving this issue. Nautilus filed its notice of appeal on May 10, 2012, including the assertion that "the trial court erred in its award of costs." The appeal was

(continued...)

-21-                                        **6942**

copying and computerized research.  Alaska Civil Rule 79(b) requires an itemized and verified cost bill that shows the date costs were incurred.  For its copying, Exxon provided a breakdown of costs that included date, rate, and quantity; for computerized research costs, Exxon provided a breakdown by date.  Civil Rule 79 does not require any more detail than that.

Nautilus also argues that the amounts spent on copying and research were excessive.  It contends that Exxon's claim for $42,326.96 in computerized research costs is extraordinary given that "computer data and research companies typically charge law firms fixed monthly rates," a factual assertion that it does not support.  In *Sever v. Alaska Pulp Corp.*, we held that the superior court did not abuse its discretion in awarding over $18,000 in costs for computerized research, where the appellant "failed to demonstrate that this research was not reasonably necessary to defend against the suit."[59]  In this case, too, it was within the superior court's discretion to award these research and copying costs.

Nautilus also challenges as unnecessary the costs for out-of-state counsel to travel to depositions.  Exxon sought travel costs for one attorney for each deposition, as allowed by Civil Rule 79(g)(1)(B).  While Rule 79(g)(1)(A) limits travel expenses for non-local attorneys attending court proceedings to circumstances when local counsel are not present, there is no correlative limitation on travel for depositions.  And we have held

[58](...continued)
filed after the clerk had ruled on costs but before the superior court had ruled on Nautilus's motion for further review.  But the usual remedy for a premature appeal is to hold it in abeyance until it is timely or dismiss it and allow it to be later refiled.  *See Garrison v. Dixon*, 19 P.3d 1229, 1232 (Alaska 2001).  Nautilus's appeal remained pending and became timely as to the cost issue once the superior court had ruled.

[59]     931 P.2d 354, 363 (Alaska 1996).

that an attorney's actual travel expenses may be recovered under Civil Rule 79(b) if they are necessarily incurred.[60] We conclude that it was not an abuse of discretion for the superior court to find that Exxon's travel costs were recoverable.

## V.    CONCLUSION

We REVERSE the awards of attorney fees and costs and REMAND for a recalculation of the fees award based on local rates and for the apportionment of fees and costs.  We AFFIRM on all other issues.

---

[60]    *Atl. Richfield Co. v. State*, 723 P.2d 1249, 1253 (Alaska 1986); *Eagle Air, Inc. v. Corroon & Black/Dawson & Co. of Alaska, Inc.*, 648 P.2d 1000, 1006-07 (Alaska 1982) ("Certainly the trial judge was in a better position than we are to determine whether Dawson's Washington attorneys were 'necessary' to the proceeding.").