Edmond CRITTELL and Elma
Crittell, Appellants,

v.

Laura BINGO, Thomas Bingo, Alice Ma-
suyama, Colleen Nishiyama, Elaine Sa-
kaitani, and Leatrice Takeuchi, Interest-
ed Parties, and the Estate of Violet M.B.
Houssien, Deceased, Appellees.

No. S–10642.

Supreme Court of Alaska.

Jan. 2, 2004.

Rehearing Denied Feb. 11, 2004.

Michael Cohn and George E. Goerig, Goerig & Associates, LLC, Anchorage, for Appellants.

Richard G. Haggart, Law Offices of Richard G. Haggart, P.C., Anchorage, for Appellees.

Before: FABE, Chief Justice, MATTHEWS, EASTAUGH, BRYNER, and CARPENETI, Justices.

*OPINION*

BRYNER, Justice.

## I. INTRODUCTION

Edmond and Elma Crittell, the proponents of a will held to be invalid and fraudulent, appeal the superior court's award of full attorney's fees under Alaska Civil Rule 82, contending that the rule does not apply to probate proceedings. Alternatively, the Crittells argue that the trial court abused its discretion by awarding enhanced fees under Rule 82. Because Rule 82 fees may be awarded under the probate code in cases of fraudulently brought claims, we affirm the trial court's award.

## II. FACTS AND PROCEEDINGS

This is the second time this case has come before us on appeal. The underlying case involved a probate contest between the beneficiaries of competing wills of Violet Houssien. We summarized the relevant facts in the first appeal (*Crittell I* ) as follows:

Shortly after Houssien died, Edmond Crittell petitioned the superior court to appoint him as the personal representative of Houssien's estate and to accept for informal probate a will that Houssien had executed on March 22, 1995. The 1995 will left a modest sum of cash to each of Houssien's six siblings and gave the rest of Houssien's [approximately $1.59 million] estate to Elma Crittell. The will named Edmond Crittell as executor and designated him as a contingent beneficiary in the event of a default by Elma.

Edmond Crittell's petition for informal probate was challenged by two of Houssien's sisters. The interested parties, Houssien's sisters, ... alleged that Houssien lacked testamentary capacity and acted under undue influence in executing the will. In lieu of the 1995 will, the interested parties offered for probate a prior will and codicil—executed by Houssien in 1989 and 1990—that left the bulk of Houssien's estate to her family.

. . . .

In opposing the 1995 will at the trial, the interested parties ... sought to establish that the will was a fraud. Their theory was that Houssien lacked testamentary capacity when she signed the will, and that she acted out of undue influence as a result of the Crittells' fraudulent conduct. To support this theory, the interested parties presented evidence tending to show that the Crittells befriended Houssien and deliberately curried her favor at a point in

her life when she was particularly isolated, frail, and mentally vulnerable; that they reduced her to a state of dependency and tricked her into signing papers in blank; that on March 22, 1995, they appeared with Houssien at ... Mail Boxes, Etc., with two witnesses—one Elma Crittell, the other unknown—who signed the will in front of a notary but fraudulently misrepresented their true identities; that the Crittells thereafter arranged to have the Mail Boxes, Etc. store burglarized in order to remove the records of notarization, which might have allowed the fraudulent witnesses to be identified; and that they subsequently kept Houssien from contacting an attorney to change the 1995 will.[1]

After a two-week bench trial in July 1999, the superior court ruled in favor of the interested parties, finding fraud, lack of testamentary capacity, and undue influence.[2] The court found that the Crittells had engaged in a fraudulent scheme to induce Violet to execute the 1995 will, had fabricated documents associated with the will, and had provided false testimony regarding their participation in the fraudulent scheme.[3] The superior court then awarded attorney's fees under Alaska Civil Rule 68's offer of judgment provision and costs under Rule 79.

The Crittells appealed. We affirmed the trial court's decision on the merits, finding "ample evidence" to support the superior court's finding of testamentary incapacity and "compelling evidence" of undue influence.[4] We stated that "[o]ur review of the record convinces us that the trial court's findings are supported by overwhelming circumstantial evidence that the Crittells overbore Houssien's free will by their fraudulent conduct."[5] Applying the commonly recognized earmarks of fraud, we found ample evidence of fraudulent influence:

Judged by these common earmarks of fraudulent influence, the record easily supports the superior court's finding of undue influence. First, although Houssien had employed attorneys to draft her prior wills, the 1995 will was produced without the aid of counsel; further, the record contains substantial evidence suggesting that the Crittells impeded Houssien's access to counsel after the will was signed. Second, the drafting, execution, and publication of the 1995 will were shrouded in secrecy, haste, and suspicious circumstances. Third, the will exhibited an unexplained— or at least irrationally explained—change in Houssien's attitude toward others. Fourth, the 1995 will reflects a sudden change in Houssien's prior plan of disposition. Fifth, the will's gift to Elma Crittell—almost completely excluding all other beneficiaries—certainly seems unnatural and unjust. And sixth, as we have previously discussed, Houssien's physical and mental impairments made her particularly susceptible to—and a natural target of— undue influence.[6]

Although we affirmed the merits of the superior court's ruling, we vacated the judgment and remanded on the issue of attorney's fees, finding that the court's award violated Rule 68(b)(2).[7] We declined to decide other potential attorney's fees issues because neither party had adequately briefed them, but we noted that an award of fees might be appropriate under Rule 82(b), and we indicated that the trial court would not be precluded on remand from reconsidering its initial decision to deny enhanced fees under Rule 82(b)(3).[8]

On remand, the Houssiens moved for enhanced attorney's fees under Rule 82(b)(3). The superior court granted the motion and awarded the Houssiens their full reasonable fees; using the Houssiens' counsel's total hours and standard rate to calculate their

1. *Crittell v. Bingo*, 36 P.3d 634, 636–37 (Alaska 2001).

2. *Id.* at 637–38.

3. *Id.* at 647–52 (appendix containing superior court's findings).

4. *Id.* at 641–42.

5. *Id.* at 642.

6. *Id.*

7. *Id.* at 636, 643.

8. *Id.* at 643.

fees, the court entered a fee award of $338,668.35.

## III. DISCUSSION

### A. Civil Rule 82 Attorney's Fees May Be Awarded in Probate Proceedings for Fraud Upon the Court.

 The Crittells argue that the trial court erred by awarding Civil Rule 82 attorney's fees because the civil rules do not apply to probate proceedings. They further contend that awards under Rule 82 are barred by AS 13.16.435, a provision of the probate code.[9] Neither argument is persuasive.[10]

██ In contending that Rule 82 does not apply to probate contests the Crittells insist that probate proceedings are not civil actions, and so should not be governed by the civil rules. They note that Rule 82, by its own terms, provides for awards of fees to a prevailing party only in a "civil case." [11]

But our Civil Rules use the term "civil action" the same way that the Federal Rules of Civil Procedure use it. Alaska Civil Rule 2 provides: "There shall be one form of action to be known as a 'civil action.' " Federal Rule of Civil Procedure 2 omits the "a" before "civil action," but otherwise contains identical language.[12] The federal rule has been interpreted broadly:

A number of important consequences follow from [Federal Rule of Civil Procedure 2]: the forms of action are abolished, the separate equity practice of the federal courts is eliminated, the old equity rules are superseded, . . . and the significance of the term "cause of action," which formerly was a matter of serious dispute, has been eliminated. Today, there is a single procedural framework for all federal civil proceedings, regardless of the substantive claim at issue. . . . [13]

The broad meaning ascribed to "civil action" in Federal Rule 2 would seem to encompass probate actions. Here, the Crittells advance no good reason to interpret Alaska Civil Rule 2 more narrowly than its federal counterpart.

██ Moreover, Alaska's Probate Rules confirm that the Civil Rules apply in Alaska probate cases when the Probate Rules fail to include a controlling provision:

Where no specific procedure is prescribed by these rules, the court may proceed in any lawful manner, including application of the Civil and Evidence Rules, applicable statutes, the Alaska and United States Constitutions or common law. Such a procedure may not be inconsistent with these rules and may not unduly delay or otherwise interfere with the unique character and purpose of probate proceedings.[14]

(a) Allowance to Prevailing Party. Except as otherwise provided by law or agreed to by the parties, the prevailing party in a civil case shall be awarded attorney's fees calculated under this rule.

---

9. The Crittells make parallel arguments regarding the trial court's award of Rule 79 costs. Because the Crittells neither appealed the cost award in *Crittell I* nor adequately raised the issue on remand, the Crittells have waived any claim as to costs. *See State Commercial Fisheries Entry Comm'n v. Carlson*, 65 P.3d 851, 873–74 (Alaska 2003) (holding that state had waived argument because it could have been raised in an earlier appeal but was not and because it fell outside the scope of remand); *Brandon v. Corr. Corp. of Am.*, 28 P.3d 269, 280 (Alaska 2001) (stating that an argument not raised below is waived).

10. We review a trial court's interpretation of statutes and court rules under the independent judgment standard. *Enders v. Parker*, 66 P.3d 11, 13–14 (Alaska 2003); *see also Fleegel v. Estate of Boyles*, 61 P.3d 1267, 1270–71 (Alaska 2002) (statutory interpretation and application is a question of law); *Reich v. Cominco Alaska, Inc.*, 56 P.3d 18, 21 (Alaska 2002) (interpretation of civil procedure rule is a question of law).

11. Alaska Civil Rule 82 provides, in part:

12. Fed.R.Civ.P. 2.

13. 4 CHARLES ALAN WRIGHT & ARTHUR R. MILLER, FEDERAL PRACTICE AND PROCEDURE § 1042 (3d ed.2002); *see also Copper Valley Trading Co. v. Kratz*, 513 P.2d 1113, 1115 (Alaska 1973) (quoting very similar passage from another federal treatise and citing WRIGHT & MILLER § 1042); *cf. Milwaukee County v. M.E. White Co.*, 296 U.S. 268, 56 S.Ct. 229, 80 L.Ed. 220 (1935) ("[S]uits of a civil nature within the meaning of [section 24(1) of the Judicial Code] are those which do not involve criminal prosecution or punishment, and which are of a character traditionally cognizable by courts of common law or of equity.").

14. Alaska Probate Rule 1(e).

In the present case, then, Civil Rule 82 governs the award of fees unless a specific provision of the Probate Rules applies. The Crittells argue that AS 13.16.435 controls the award of fees and renders Rule 82 inapplicable. Section .435 provides:

> If any *personal representative or person nominated as personal representative* defends or prosecutes any proceeding *in good faith*, whether successful or not, that person is entitled to receive from the estate necessary expenses and disbursements including reasonable attorney fees incurred.[15]

Relying on the provision, the Crittells maintain that a prevailing party in a will contest cannot claim Rule 82 fees from the competing party but must instead seek reimbursement of fees from the estate. To support this proposition, the Crittells cite our recent decision in *Enders v. Parker.*[16] But the Crittells overstate the holding in *Enders.*

There, we held that a personal representative in a will contest cannot claim attorney's fees from a competing personal representative under Civil Rule 82; we reasoned that section .435 specifically governs the situation, requiring the estate to reimburse a personal representative or a person nominated as a personal representative.[17] We held that section .435 establishes three requirements for recovering fees from an estate: "[I]n order for the claimant to recover, (1) he or she must be a personal representative or nominated as a personal representative; (2) he or

she must have brought or defended the proceeding in good faith; and (3) expenses must be 'necessary' and attorney's fees 'reasonable.' "[18]

But here, section .435 did not apply to the interested parties' request for fees, since they did not bring their case as personal representatives and did not claim to be persons nominated as personal representatives under either of Violet's wills.[19] And while Edmond Crittell did claim to be the personal representative under Violet's 1995 will, the superior court ruled Crittell had acted fraudulently in claiming to represent the estate under this will and that the will itself was fraudulent. Given these findings, which have already been determined to be well supported by the evidence, section .435 could not apply to the Crittells, since Edmond Crittell failed to meet that provision's first requirement: he was neither the personal representative of the estate nor a person nominated as the personal representative. Because section .435 did not apply in this case, it follows that the superior court properly concluded that Civil Rule 82 governed the interested parties' right to recover fees.

### B. Awarding Enhanced Fees Was Not an Abuse of Discretion.

The Crittells alternatively argue that, even if Rule 82 applies in this case, the superior court abused its discretion by awarding enhanced fees under 82(b)(3).[20] The superior

**15.** AS 13.16.435 (emphasis added).

**16.** 66 P.3d 11, 17 (Alaska 2003).

**17.** *Id.* at 17.

**18.** *Id.* at 15.

**19.** The Crittells cursorily argue that the interested parties acted as de facto personal representatives and should be treated as personal representatives because the nominal personal representative ratified their litigation. But the Crittells failed to raise this argument in the trial court, and they developed it on appeal primarily in their reply brief. We therefore conclude that the argument has been waived. *See, e.g., Sengupta v. Univ. of Alaska,* 21 P.3d 1240, 1255 n. 61 (Alaska 2001) ("This court will not consider arguments on appeal that were not raised below unless the new issues either establish plain error or do not depend on new or

controverted facts, are closely related to the appellant's arguments at trial, and could have been gleaned from the pleadings."); *Adamson v. Univ. of Alaska,* 819 P.2d 886, 889 n. 3 (Alaska 1991) ("[W]here a point is given only a cursory statement in the argument portion of a brief, the point will not be considered on appeal."); Alaska R.App. P. 212(c)(3) (providing that reply brief "may raise no contentions not previously raised in either the appellant's or the appellee's briefs").

**20.** Civil Rule 82(b)(3) provides, in relevant part:
(3) The court may vary an attorney's fee award calculated under subparagraph (b)(1) or (2) of this rule if, upon consideration of the factors listed below, the court determines a variation is warranted:
(A) the complexity of the litigation;
(B) the length of trial;
(C) the reasonableness of the attorneys' hourly rates and the number of hours expended;

court awarded the interested parties their full reasonable attorney's fees "based on the complexity of the case, the reasonableness of [counsel's] hours and hourly fees, the vexatiousness and bad conduct of the Crittells, and the likelihood that this enhancement would chill the exercise of true rights and claims before the court." The court explained its reasoning for the enhanced fee award as follows:

> This case was brought to the court and resulted in part due to bad conduct of the Crittells. While it is without a doubt that they helped Violet Houssien and were kind to her, it is also true that they were involved in the preparation, execution, and submission to the court of a document which took advantage of her infirmities. . . .
>
> . . . .
>
> The claims of the interested parties were reasonable. The conduct of the Crittells was very questionable, given their involvement, but denial of involvement, in the preparation of the will in question.
>
> The court finds that the behavior of the Crittells was vexatious and in bad faith to the extent they falsely represented throughout—and continue to this day—to deny their involvement in the will's preparation and execution. Such conduct is vexatious and in bad faith and affected the length, complexity and need for a trial.

■ The Crittells contend initially that the superior court misapplied the phrase "vexatious or bad faith conduct" because, as used

in Rule 82(b)(3), the phrase applies only to a party's conduct in litigating a case; it does not refer to the underlying conduct upon which the claim is based. Here, the Crittells assert, even if their underlying claims were meritless, the claims were not litigated vexatiously or in bad faith.

■ But our case law establishes that an award of enhanced fees under Rule 82 may be based on vexatious and bad faith litigation "both as to the filing of the case and the prosecution of it." [21] In awarding enhanced fees in the present case, the superior court relied on both the fraudulent nature of the Crittells' underlying claims and the fraudulent manner in which they prosecuted their claims. And as we have already indicated, ample evidence supports the court's findings that the will advocated by the Crittells was both conceived in fraud and advanced at trial through the Crittells' fraudulent actions.[22] Thus, the superior court properly applied the concept of vexatious and bad faith conduct in enhancing the attorney's fee award.

■ The Crittells separately claim that the superior court's award of enhanced fees was an unlawful award of punitive damages and violated their right of access to the courts, as guaranteed by article IV, section 3 of the Alaska Constitution and the due process clauses of the Alaska and United States Constitutions. But these claims lack merit. While "[w]e have expressed concern that 'financially ruinous' fee awards against *good*

. . . .
(F) the reasonableness of the claims and defenses pursued by each side;
(G) vexatious or bad faith conduct;
. . . .
(I) the extent to which a given fee award may be so onerous to the non-prevailing party that it would deter similarly situated litigants from the voluntary use of the courts.
An award of full attorney's fees is manifestly unreasonable in the absence of a finding of bad faith or vexatious conduct. *Marathon Oil Co. v. ARCO Alaska, Inc.*, 972 P.2d 595, 605 (Alaska 1999); *State, Child Support Enforcement Div. v. Allsop*, 902 P.2d 790, 795 (Alaska 1995); *Demoski v. New*, 737 P.2d 780, 788 (Alaska 1987). An award of full, actual attorney's fees due to bad faith or vexatious conduct is reviewed for abuse of discretion. *E.g., Allsop*, 902 P.2d at 795.

**21.** *Garrison v. Dixon,* 19 P.3d 1229, 1234 (Alaska 2001).

**22.** Although the Crittells insist that they did not litigate their claims vexatiously or in bad faith, they focus their argument on their attorney's conduct and rely on cases construing Alaska Civil Rule 11 to support the conclusion that their attorney did nothing improper. But the professionalism and conduct of the Crittells' attorney was never at issue here. As the trial court stated, "The enhancement of attorney fees against a party is due to the parties' behavior, not the conduct of counsel." Nothing in the superior court's ruling or in this opinion suggests any impropriety on the part of the Crittells' counsel. Thus, Civil Rule 11, which governs the conduct of attorneys, not clients, has no relevance here.

538

*faith* civil litigants could deter access to the courts," [23] the superior court determined that the Crittells are not good-faith litigants. As the superior court noted, an award of full fees against bad-faith claimants is unlikely to deter good-faith claims, because "[p]arties who have not created false claims and who do not testify falsely will not hesitate to defend or bring cases to the court."

■ Last, the Crittells assert that the attorney's fee award will unjustly enrich the estate because the superior court failed to reduce the amount of full reasonable fees to account for an estimated tax deduction that the estate could purportedly claim for the amount of the contingent-fee obligation. But an allegation of unjust enrichment will succeed only when "the defendant has received a benefit from the plaintiff and it would be inequitable for defendant to retain the benefit without compensating plaintiff for its value." [24] Here, the interested parties plausibly argue that, because the superior court based its award of full reasonable fees on their attorney's billable time rather than on the amount due under the contingent-fee contract, the award of nominally full fees falls several hundred thousand dollars short of the amount that they will actually owe for fees. According to the estate, then, the fee award would not result in a net benefit, even assuming that the estate is eligible to receive a tax deduction for fees.

The Crittells do not refute this argument; nor do they explain why it would be unjust for the estate to retain any benefit received under these circumstances. Because the Crittells have failed to establish either that the full-fee award will result in a net benefit to the estate or that it would be unjust for the estate to retain any benefit it might receive, we find no merit to the Crittells' unjust enrichment claim.[25]

**23.** *Reid v. Williams,* 964 P.2d 453, 462 (Alaska 1998) (emphasis added).

**24.** *Sparks v. Gustafson,* 750 P.2d 338, 342 (Alaska 1988); *see also Old Harbor Native Corp. v. Afognak Joint Venture,* 30 P.3d 101, 107 (Alaska 2001) ("[T]he doctrine of unjust enrichment is

## IV. CONCLUSION

For these reasons, we AFFIRM the superior court's award of attorney's fees.

predicated on the theory of restitution: When a party unjustly receives, retains, or appropriates property or a benefit, the party should repay the source of the property or benefit.").

**25.** *See id.*