*Notice: This opinion is subject to correction before publication in the PACIFIC REPORTER. Readers are requested to bring errors to the attention of the Clerk of the Appellate Courts, 303 K Street, Anchorage, Alaska 99501, phone (907) 264-0608, fax (907) 264-0878, email corrections@akcourts.us.*

THE SUPREME COURT OF THE STATE OF ALASKA

| | | |
|---|---|---|
| INNA V. BOIKO and LOUIS PICARELLA, | ) ) ) | Supreme Court Nos. S-16482/16512 |
| Appellants and Cross-Appellees, | ) ) ) | Superior Court No. 3AN-14-10765 CI |
| v. | ) ) ) | O P I N I O N |
| GEORGE M. KAPOLCHOK and GEORGE KAPOLCHOK LAW OFFICES, INC., | ) ) ) ) | No. 7278 – August 24, 2018 |
| Appellees and Cross-Appellants. | ) ) ) ) | |

Appeal from the Superior Court of the State of Alaska, Third Judicial District, Anchorage, Pamela Scott Washington, Judge pro tem.

Appearances: James Alan Wendt, Law Offices of James Alan Wendt, Anchorage, for Appellants/Cross-Appellees. George M. Kapolchok, George Kapolchok Law Offices, Inc., Anchorage, for Appellees/Cross-Appellants.

Before: Stowers, Chief Justice, Winfree, Maassen, Bolger, and Carney, Justices.

WINFREE, Justice.

## I. INTRODUCTION

A self-represented couple sued their lawyer for legal malpractice. After lengthy and contentious discovery disputes, at the end of which the couple was sanctioned, the couple retained counsel to assist them in terminating the litigation. The parties agreed to dismiss the suit with prejudice, leaving open the couple's former lawyer's right to seek an award of attorney's fees. This appeal focuses on the superior court's decisions regarding that lawyer's motion for attorney's fees.

Very early in the litigation the lawyer gave the couple a joint, unapportioned Alaska Civil Rule 68 offer of judgment. The superior court ruled the offer was invalid. Following our precedent that joint, unapportioned offers of judgment generally are invalid, we affirm the superior court's ruling as a matter of law.

The superior court applied Alaska Civil Rule 82 for its award of partial reasonable attorney's fees to the lawyer. But instead of employing Rule 82(b)(2)'s standard 20% calculation for an award without a money judgment, the court applied Rule 82(b)(3), which allows courts to vary from the standard award. The court made findings and exercised its discretion to use 15% for calculating its fee award to the lawyer, and it left the discovery sanction against the couple in place. We conclude that the superior court's findings are not clearly erroneous and that the court did not abuse its discretion or otherwise err when it applied Rule 82(b)(3); we also conclude that the court did not abuse its discretion in levying and leaving in place the discovery sanction.

We therefore affirm the superior court's judgment.

## II. FACTS AND PROCEEDINGS

Inna Boiko and Louis Picarella retained attorney George Kapolchok and his law firm to represent them in dental malpractice and loss of consortium claims after Boiko underwent procedures allegedly resulting in disfigurement and extreme pain. The dentist moved for partial summary judgment, arguing that the statute of limitations

period had expired before the initial complaint was filed. Boiko and Picarella opposed, asserting that there were genuine issues of material fact regarding the date the statute of limitations began to run.

While the summary judgment motion was pending, the parties engaged in settlement negotiations. Months later, on December 13, 2012, the court denied the motion, holding that — based on the continuing course of treatment doctrine — the original complaint was timely filed. A certificate of distribution on the order indicates it was mailed to the parties' attorneys the day it was issued. On December 17 Boiko and Picarella signed a settlement agreement in Kapolchok's office. They stipulated to dismissal of the case, with prejudice, in return for a settlement payment. The day after the settlement agreement was signed, Kapolchok's paralegal emailed Picarella the favorable summary judgment decision.

Boiko and Picarella, self-represented, subsequently filed a complaint against Kapolchok and his law firm (collectively Kapolchok unless otherwise noted). They contended that they had settled the dental malpractice lawsuit without knowledge of the favorable summary judgment ruling and that Kapolchok deliberately had withheld the decision to induce them to settle at that time. They alleged legal malpractice, intentional and negligent misrepresentation, intentional and negligent infliction of emotional distress, breach of fiduciary duties, breach of contract, and unfair business practices.

Kapolchok retained a second attorney to represent his corporate law firm and assist him in defending the legal malpractice claim. One month after service of the complaint, Kapolchok made the couple a $1,500 joint, unapportioned Rule 68 offer of

judgment.[1]  The offer was not accepted.  Following a lengthy and contentious discovery process, including Kapolchok filing several motions to compel, the superior court levied $2,000 in sanctions against Boiko and Picarella:  $1,000 to be paid to the court, and $1,000 to be paid to Kapolchok.

At this point Boiko and Picarella hired an attorney, who filed a motion for complete dismissal of their claims with prejudice, conditioned on their ability to contest any attorney's fees motion by Kapolchok.  The superior court dismissed the case with prejudice and gave Kapolchok a deadline to file a motion for attorney's fees.

Boiko and Picarella preemptively moved for the superior court to hold the Rule 68 offer of judgment invalid because it was an unapportioned, joint offer[2] and to instead calculate any attorney's fees award under Rule 82.[3]  Kapolchok opposed, arguing that no apportionment problems existed because they were husband and wife and Picarella's loss of consortium claim was purely derivative of Boiko's claims.  Kapolchok noted they had accepted a joint check for the dental malpractice settlement, undermining their purported need for apportioned offers in the legal malpractice case.  Kapolchok then sought attorney's fees under Rule 68.  He contended that after a year's defense work he had incurred $85,296 in fees and was entitled to an award of 75% of that amount.

Boiko and Picarella opposed; they asserted that instead of Rule 82's usual 20% award, the court should decline to award any attorney's fees at all.  They

---

        [1]     *See* Alaska R. Civ. P. 68 (providing rules for offer of judgment and that offeree shall pay offeror's allowable costs and reasonable attorney's fees incurred after offer date if final judgment is a given percentage "not more favorable" than offer).

        [2]     *See John's Heating Serv. v. Lamb*, 46 P.3d 1024, 1041-42 (Alaska 2002) (discussing difficulties of unapportioned joint offers in Rule 68 context).

        [3]     *See* Alaska R. Civ. P. 82 (providing standard schedule and enumerating grounds for varying attorney's fee awards).

enumerated several grounds for a variance under section (b)(3) of the rule, including reasonableness of their legal malpractice claims, Kapolchok's vexatious and bad faith conduct in both the dental and legal malpractice cases, and their status as self-represented plaintiffs.[4]

Before Kapolchok replied, the superior court ruled without elaboration that the Rule 68 offer of judgment was invalid. Kapolchok then recomputed his prospective fee award under Rule 82, submitting billings dating back to the first day of litigation instead of the offer of judgment, totaling $123,099.50. Kapolchok also requested an enhancement from 20% to 50% under section (b)(3) of the rule, based on the unreasonableness of Boiko's and Picarella's claims and their vexatious and bad faith conduct throughout the litigation.[5]

The superior court awarded Kapolchok Rule 82 attorney's fees, but reduced the calculation from 20% to 15% under section (b)(3) of the rule. The final judgment included the discovery sanction levied against Boiko and Picarella, for a total judgment of $18,902.33.

Boiko and Picarella filed a motion to reconsider, arguing that the court should have considered Kapolchok's vexatious conduct in the underlying dental malpractice case and that the court overlooked Kapolchok's use of privileged information to harass the couple in the present litigation. The court denied the motion, stating that "[i]t is not appropriate for this court to consider [Boiko's and Picarella's] claims about [Kapolchok's] bad faith or vexatious conduct in the underlying action that

---

[4]     *See* Alaska R. Civ. P. 82(b)(3)(F) (reasonableness of claims and defenses), (G) (vexatious or bad faith conduct), and (K) (other equitable factors).

[5]     *See* Alaska R. Civ. P. 82(b)(3)(F) (reasonableness of claims and defenses) and (G) (vexatious or bad faith conduct).

forms the basis of this malpractice case when deciding whether to enhance or reduce attorney fees in this case."

Boiko and Picarella appeal the court's decision to award attorney's fees and to maintain the discovery sanction. Kapolchok cross-appeals, challenging both the court's decision invalidating the Rule 68 offer and its decision to reduce rather than enhance attorney's fees under Rule 82(b)(3).

## III. STANDARD OF REVIEW

The validity of a Rule 68 offer of judgment presents a question of law that we review de novo.[6] We review an award of attorney's fees under Rule 82 for abuse of discretion and will not disturb the award on appeal unless it is "arbitrary, capricious, manifestly unreasonable, or improperly motivated."[7] When an award or enhancement "calls into question [a party's] litigation conduct and the potential merits of [the party's] underlying . . . motions, we assess de novo the legal and factual viability of [the] motions and review relevant findings of fact for clear error."[8] We review imposition of discovery sanctions for abuse of discretion.[9]

---

[6] *Marshall v. Peter*, 377 P.3d 952, 956 (Alaska 2016); *Progressive Corp. v. Peter ex rel. Peter*, 195 P.3d 1083, 1089 (Alaska 2008); *Pagenkopf v. Chatham Elec., Inc.*, 165 P.3d 634, 638 (Alaska 2007) (treating Rule 68 offer and acceptance as contract and therefore applying de novo review).

[7] *Kollander v. Kollander*, 400 P.3d 91, 95 (Alaska 2017) (quoting *Roderer v. Dash*, 233 P.3d 1101, 1106 (Alaska 2010)).

[8] *Herring v. Herring*, 373 P.3d 521, 528 (Alaska 2016) (first three alterations in original) (quoting *Johnson v. Johnson*, 239 P.3d 393, 399 (Alaska 2010)); *Cizek v. Concerned Citizens of Eagle River Valley, Inc.*, 71 P.3d 845, 848-49 (Alaska 2003).

[9] *Roderer*, 233 P.3d at 1106.

## IV. DISCUSSION

### A. The Rule 68 Offer Was Invalid.

Kapolchok made a $1,500 joint offer of judgment to Boiko and Picarella "in complete satisfaction of all [their] claims." Kapolchok argues that the couple's rejection of this offer compelled the superior court to employ Rule 68's more generous formula for calculating attorney's fees. We conclude otherwise.

Rule 68's goal is to "encourage settlement and avoid protracted litigation."[10] It allows a party before trial to make an offer of judgment "in complete satisfaction of the claim . . . with costs then accrued."[11] If the offer is served less than 60 days after the date set for initial disclosures, the offeree does not accept within 10 days, and the ultimate judgment is "at least [5%] less favorable to the offeree than the offer," then the offeree must pay 75% of the offeror's reasonable and actual attorney's fees.[12] The rule "creates a financial incentive for settlement by 'encourag[ing] parties to assess their litigation risks carefully and penaliz[ing] an offeree's rejection of a reasonable settlement offer.' "[13]

---

[10] *Beal v. McGuire*, 216 P.3d 1154, 1178 (Alaska 2009); *see Progressive Corp.*, 195 P.3d at 1088.

[11] Alaska R. Civ. P. 68(a).

[12] Alaska R. Civ. P. 68(a), (b)(1).

[13] *Marshall v. Peter*, 377 P.3d 952, 957 (Alaska 2016) (alterations in original) (quoting *Windel v. Mat-Su Title Ins. Agency, Inc.*, 305 P.3d 264, 279 (Alaska 2013)).

But "[n]ot all settlement offers trigger Rule 68."[14] An invalid offer "may not be considered in determining costs and attorney's fees."[15] Apportionment difficulties are one ground upon which a court may find an offer invalid.[16] We have held that difficulties are "intrinsic to cases involving unapportioned joint offers because the offerees must agree . . . how proceeds are to be divided."[17] "In determining whether a joint offer may nonetheless be valid, we consider two factors: (1) whether '[t]he settlement offer clearly indicated all claims between the parties would be resolved if the offer were accepted'; and (2) whether apportionment difficulty actually exists."[18] Apportionment difficulties exist "if [the offer] would leave unresolved serious disputes that, absent settlement, would have to be resolved by a jury."[19]

The parties dispute only the second prong, whether "apportionment difficulty actually exist[ed]."[20] Kapolchok asserts the joint offer was appropriate because Picarella's claims were purely derivative in both the dental and legal malpractice cases, and no apportionment difficulties existed between the husband and wife, as they had accepted a joint offer for the dental malpractice case. Kapolchok also contends that we

---

[14] *Id.*

[15] *Alaska Fur Gallery, Inc. v. First Nat'l Bank Alaska*, 345 P.3d 76, 98 (Alaska 2015) (quoting *Grow v. Ruggles*, 860 P.2d 1225, 1227 (Alaska 1993)).

[16] *See John's Heating Serv. v. Lamb*, 46 P.3d 1024, 1042 (Alaska 2002).

[17] *Id.*; *see also Alaska Fur Gallery, Inc.*, 345 P.3d at 99 ("[J]oint offers . . . are usually invalid as Rule 68 offers of judgment due to apportionment difficulties.").

[18] *Alaska Fur Gallery, Inc.*, 345 P.3d at 99 (alteration in original) (quoting *John's Heating Serv.*, 46 P.3d at 1042 & n.85).

[19] *Roderer v. Dash*, 233 P.3d 1101, 1113 (Alaska 2010).

[20] *See Alaska Fur Gallery, Inc.*, 345 P.3d at 99.

are obligated to remand because the court failed to specify any basis for holding the offer invalid, hindering Kapolchok's ability to contest the ruling.

We disagree on both counts. Although the superior court's decision did not explicitly state the basis upon which it found the Rule 68 offer invalid, it need not have done so.[21] Apportionment was the sole basis upon which the parties litigated the offer's validity. Contrary to Kapolchok's assertions, we see no reason to remand for clarification.

We also agree with the superior court that the offer was invalid. The $1,500 offer to Boiko and Picarella was a classic joint offer: an offer of a lump sum to two offerees without reference to apportionment.[22] Our past decisions recognize the difficulties of apportioning offers and hold that such difficulties "warrant a general exclusion of joint offers from the penal cost provisions of Rule 68."[23]

Picarella had a separate legal malpractice claim and was thus owed an apportioned offer. It is irrelevant that Boiko and Picarella were joint payees for the dental malpractice claim or treated as a single client by Kapolchok. Picarella's original loss of consortium claim in the dental malpractice lawsuit being derivative does not bear on whether he had an independent legal malpractice claim in this litigation. Kapolchok formed a separate attorney-client relationship with Picarella by obtaining his signature on the attorney-client fee agreement and adding his loss of consortium claim to the dental

---

[21]     *See Parks v. Parks*, 214 P.3d 295, 304 (Alaska 2009) ("Trial courts are not required to state all findings in their written orders 'so long as the basis for their decisions is clear from the record and thus susceptible to review.' " (quoting *Duffus v. Duffus*, 932 P.2d 777, 779 (Alaska 1997))).

[22]     *See, e.g.*, *John's Heating Serv.*, 46 P.3d at 1042 (citing *Brinkerhoff v. Swearingen Aviation Corp.*, 663 P.2d 937, 943 (Alaska 1983)).

[23]     *See Brinkerhoff*, 663 P.2d at 943.

malpractice lawsuit. Duties individually owed to Picarella flowed from the creation of that attorney-client relationship in addition to those separately owed to Boiko.[24] Because Picarella had a separate legal relationship with and therefore a separate malpractice claim against Kapolchok, Picarella was owed an apportioned offer.

We see no grounds for deviating from the general rule against joint offers under the facts of this case. Because we agree that the Rule 68 offer was invalid, we affirm the superior court's decision to calculate attorney's fees under Rule 82.

**B.      The Rule 82 Attorney's Fees Award Was Not An Abuse of Discretion.**

Rule 82(b)(2) provides that when a prevailing party recovers no money judgment and the case is resolved without trial, the court shall award the prevailing party 20% of its actual attorney's fees. But Rule 82(b)(3) allows the court to vary an attorney's fees award upon consideration of certain enumerated factors as well as "other equitable factors deemed relevant."[25]

---

[24]      Alaska Rule of Professional Conduct 1.7 provides guidance concerning representation of multiple clients and emphasizes that an attorney bears responsibilities to each. The commentary to Rule 1.2, which details the principles governing the scope of a lawyer's representation, states that although lawyers and clients have "substantial latitude to limit the representation," such limitation "does not exempt a lawyer from the duty to provide competent representation." Alaska R. Prof. Conduct 1.2 cmt. 7. Kapolchok has not persuaded us that his representation of both Boiko and Picarella was so limited or that he did not owe separate legal obligations to Picarella in the event a conflict did arise.

[25]      Alaska R. Civ. P. 82(b)(3)(K).

We review all Rule 82 attorney's fees awards for abuse of discretion,[26] and "[a]n award constitutes an abuse of discretion only when it is manifestly unreasonable."[27] In the event of a variance, "legal questions . . . are reviewed de novo, while exceptions that rely on factual findings are reviewed for clear error."[28] The court enjoys "broad discretion to award fees and to alter the amount it intends to award."[29]

### 1. Reduction of attorney's fees from 20% to 15%

In determining whether varying an award under Rule 82 is warranted, the superior court may consider "the complexity of the litigation"[30] and "the reasonableness of the numbers of attorneys used."[31] It may also consider "the extent to which a given fee award may be so onerous to the non-prevailing party that it would deter similarly situated litigants from the voluntary use of the courts,"[32] as well as "other equitable factors deemed relevant."[33]

---

[26] *Herring v. Herring*, 373 P.3d 521, 528 (Alaska 2016) (citing *Johnson v. Johnson*, 239 P.3d 393, 399 (Alaska 2010)); *Cizek v. Concerned Citizens of Eagle River Valley, Inc.*, 71 P.3d 845, 850 (Alaska 2003) ("[T]he decision to award and to alter fees under Rule 82 is committed to the discretion of the trial court and will only be reversed if the court has abused its discretion.").

[27] *Cizek*, 71 P.3d at 848 (quoting *Thorstenson v. ARCO Alaska, Inc.*, 780 P.2d 371, 376 (Alaska 1989)).

[28] *Id*. at 848-49.

[29] *Id.* at 851.

[30] Alaska R. Civ. P. 82(b)(3)(A).

[31] Alaska R. Civ. P. 82(b)(3)(D).

[32] Alaska R. Civ. P. 82(b)(3)(I).

[33] Alaska R. Civ. P. 82(b)(3)(K).

Here the court reduced the fee award from 20% to 15% "due to the unreasonableness of paying two attorneys to defend what appears to be a rather unremarkable attorney malpractice case" brought by self-represented plaintiffs. This view was compounded by Kapolchok not documenting the full amount of fees sought, prompting the court to rely on a lower estimate. The fee reduction was further motivated by the court's policy concern that "a large fee award may deter similarly situated plaintiffs from bringing similar cases." The court noted that "[i]mposition of a large fee award when a defendant attorney ultimately prevails insidiously closes the doors of the courthouse ever so slightly to plaintiffs who choose to represent themselves and assume the formidable task of suing their former attorney."

Kapolchok advances three arguments supporting his position that the court erred in its decision to reduce attorney's fees. First, Kapolchok argues that because he was sued both in an individual capacity and as a corporation, a second attorney had to be retained under the statute requiring that corporations appear by attorney. But Kapolchok contorts the purpose of AS 22.20.040, requiring corporations to appear by licensed attorney.[34] The essence of the rule is that, unlike individual persons, corporations do not have the right of self-representation.[35] But AS 22.20.040 does not require an incorporated law firm to obtain outside counsel to represent it in court,

---

[34] *See* AS 22.20.040(a)(2) ("[A] corporation, either public or private, shall appear by attorney in all cases unless an exception to the corporation's appearance by an attorney has been explicitly made by law.").

[35] *See Roberts v. State, Dep't of Revenue*, 162 P.3d 1214, 1220-21 (Alaska 2007) (discussing policy reasons for preventing lay persons from representing corporation in litigation and concluding "[t]o allow an individual the protections of the corporate form, as well as the option to shed the corporate form when it serves his or her interest, undermines the purposes of [AS 22.20.040(a)(2)]").

however advisable that may be; the statute simply means a lay person cannot represent the law firm.

Second, Kapolchok disputes the court's characterization of the litigation as "unremarkable" and "not complex." Kapolchok frames the legal malpractice suit as a case involving the larger dental malpractice case, and he asserts he would have needed to hire at least 3 experts, conduct 30 depositions, and interview 40 doctors across 4 different states to defend the suit, which he claims sought $3 million in damages.[36] He contends retaining a second attorney "to oversee the litigation was reasonable, necessary, and prudent."

In *Nautilus Marine Enterprises, Inc. v. Exxon Mobil* we upheld an award of fees when 15 attorneys had billed large sums for duplicative efforts; we accepted the superior court's rationale that "it is often advantageous to have more than one attorney present," and we concluded the award was not an abuse of discretion.[37] But we did so out of recognition that a trial court is "uniquely situated" to analyze the reasonableness of fees "because of its 'greater knowledge of the case,' " and we emphasized that "[i]t is . . . for the trial judge to determine . . . whether too many attorneys were employed."[38]

Similarly, in *Gamble v. Northstore Partnership* we affirmed an award even though the prevailing party's fees were double those of the unsuccessful party, observing "it is a judgment call . . . whether such a discrepancy reflects over-preparation and over-billing by one set of attorneys, or under-preparation and under-billing by the other set

---

[36] Boiko and Picarella did not specify damages in their legal malpractice complaint, stating only that they believed they were owed more than $100,000. The only other concrete estimate they provided for losses and future expenses was $832,939.81.

[37] 332 P.3d 554, 561 (Alaska 2014).

[38] *Id.* (alterations in original).

of attorneys."[39] We noted that "there was much discovery practice, two sets of motions for summary judgment, and a five-day trial" and that the trial court reviewed itemized billings and "was personally aware of the quality and quantity of the work . . . [done] at the trial level."[40] Given the record and the court's level of engagement, we concluded the court had not abused its discretion.[41]

Here the superior court engaged in the type of analysis for which it is particularly well-suited: reviewing itemized billing, considering whether the number of attorneys was appropriate, and assessing the fees' proportionality to the case's requirements.[42] The superior court was "personally aware" of the course and complexity of the litigation, "the quality and quantity of the work" performed, and the lengths to which Kapolchok was willing to go in defending his reputation from attack by his former clients, who were rather unsuccessfully proceeding self-represented.[43] The court found that Kapolchok had over-billed for a case that was not complex and did not merit the attention of two attorneys. Assuming none of the court's factual findings were clearly erroneous, it was within the court's discretion to reduce the percentage of fees awarded on this basis.

On review we conclude that the superior court's findings with respect to the complexity of the case and the number of attorneys needed were not clearly erroneous. Contrary to Kapolchok's assertions, the legal malpractice claim's primary focus was a

---

[39]   28 P.3d 286, 289-90 (Alaska 2001).

[40]   *Id.* at 290.

[41]   *Id.*

[42]   *See Nautilus Marine Enters.*, 332 P.3d at 561.

[43]   *See Gamble*, 28 P.3d at 290.

simpler question: whether Kapolchok knew of and deliberately withheld information about a favorable court ruling to induce his clients to settle rather than continue the litigation. It was not clearly erroneous to find that litigation over a document distribution date was not complex and that billing for two attorneys' time, especially after the scope of the litigation narrowed, was unreasonable.

We also note that the billings submitted for computation under Rule 68 show Kapolchok handled the lion's share of the work. It appears the second attorney billed over $20,000 for communications with Kapolchok, document review, and a single court appearance; the second attorney neither produced apparent work product nor engaged expert witnesses, and a significant portion of the fee requested was not supported by documentation. All court filings, consultation with experts, and discovery communications were done by Kapolchok alone. On this record, we cannot say the superior court clearly erred in finding that only one attorney was needed.

We continue to accept that it is often necessary and prudent to retain additional attorneys,[44] and we do not at all mean to suggest a legal malpractice defendant should not retain counsel for representation. However, given this record of work allocation, as well as our general deference to the superior court's personal knowledge of the parties and the case,[45] we cannot say the court's reduction of fees based on the number of attorneys was an abuse of discretion or premised upon clearly erroneous fact finding.

Finally, Kapolchok contends that the superior court's concern about a "chilling effect" on future litigants was improper. But Rule 82(b)(3) explicitly permits the court to consider "the extent to which a given fee award may be so onerous to the

---

[44]    *See Nautilus Marine Enters.*, 332 P.3d at 561.

[45]    *See id*; *Gamble*, 28 P.3d at 290.

non-prevailing party that it would deter similarly situated litigants from the voluntary use of the courts."[46]  The attorney's fees award here is $17,887.43, hardly an insignificant sum.  Given that the rule explicitly permits consideration of this factor, it was not error for the court to do so.

Because the court's legal analysis and factual findings are sound, we conclude the court did not abuse its discretion.  We therefore affirm the reduction of attorney's fees from 20% to 15%.

### 2.    Denial of motion for enhanced attorney's fees

Kapolchok argues that the superior court "failed to appreciate the unreasonableness" of Boiko's and Picarella's claims and did not adequately penalize the couple for the difficulties they caused during the discovery process.  He asserts that the superior court erred when it declined to enhance the award under Rule 82(b)(3)(F), "the reasonableness of the claims," and (G), "vexatious or bad faith conduct."

The superior court's underlying determination that Boiko's and Picarella's uncooperativeness during the discovery process was more attributable to their misunderstanding as self-represented litigants than bad faith, particularly in light of the numerous instances in which Picarella exhibited confusion about the rules and purpose of discovery, was not clearly erroneous.[47]  Neither was the court's determination that Boiko and Picarella's claims — that Kapolchok "used coercive tactics to induce [them] to settle" and attempted to hide the possibility of continuing to trial — were reasonable and brought in good faith.  We have reviewed enhanced attorney's fees awards for unreasonableness and bad faith when, for example, claims lacked any evidentiary

---

[46]    Alaska R. Civ. P. 82(b)(3)(I).

[47]    *See Cizek v. Concerned Citizens of Eagle River Valley, Inc.*, 71 P.3d 845, 850-52 (affirming trial court's decision not to reduce fees because it was not an abuse of discretion).

support, were fraudulent from inception, or were clearly brought with the intent to harass.[48] But the record shows that the order's certificate of distribution is dated December 13, 2012 and that Boiko and Picarella signed the legally binding settlement agreement on December 17, 2012, the day before receiving notice of the decision. We cannot say the court's decision "not to visit a penalty on" them for bringing the legal malpractice claim was based upon clearly erroneous factual findings or constituted an abuse of discretion.[49] We therefore affirm the superior court's decision not to vary the award based on Rule 82(b)(3)(F) or (G).

### 3. Denial of motion to further reduce attorney's fees

Boiko and Picarella argue that the superior court neglected to consider their argument that Kapolchok's bad faith conduct in the litigation violated standards of professional conduct and warranted a further reduction of attorney's fees. They allege Kapolchok committed perjury in response to an interrogatory asking why he did not inform his clients that he did not carry legal malpractice insurance. Rather than answer the question, Kapolchok responded: "Defendants and Plaintiffs discussed this issue at least three (3) times and signed off on it." Boiko and Picarella also cite as evidence of

---

[48] *See, e.g.*, *Kollander v. Kollander*, 400 P.3d 91, 96-97 (Alaska 2017) (affirming 60% attorney's fees award because losing party relitigated claims already disproved by credible testimony and barred by laches); *Crittell v. Bingo*, 83 P.3d 532, 534, 537 (Alaska 2004) (affirming enhanced attorney's fees award against party who brought fraudulent claim based on fabricated documents and fraudulent will of their creation); *Garrison v. Dixon*, 19 P.3d 1229, 1235 (Alaska 2001) (affirming full attorney's fees award because plaintiffs never introduced credible evidence, conceded after two years they had no individual claims, and appeared to have brought suit to harass and chill activity of business competitor); *Keen v. Ruddy*, 784 P.2d 653, 657 (Alaska 1989) (finding no abuse of discretion where claim "was not supported by law or fact" and clearly brought to hinder litigation of different suit).

[49] *See Cizek*, 71 P.3d at 851-52 (affirming superior court's decision not to vary attorney's fees because decision was not "manifestly unreasonable").

bad faith Kapolchok's motion to compel production of tax returns they had not filed, which he knew from privileged communications in his capacity as their attorney.

Alaska Rules of Professional Conduct require attorneys to disclose in writing whether they carry requisite amounts of malpractice insurance.[50] Alaska's professional rules also require that a lawyer "not reveal a client's confidence or secret unless the client gives informed consent, except for disclosures that are impliedly authorized."[51] "Confidence" is defined as "information protected by the attorney-client privilege under applicable law" and "secret" refers to "information gained in the professional relationship if the client has requested it be held confidential or if it is reasonably foreseeable that disclosure of the information would be embarrassing or detrimental to the client."[52] However, a lawyer is permitted to breach this confidence "to establish a claim or defense on behalf of the lawyer in a controversy between the lawyer and the client."[53]

We conclude the superior court's decision not to vary the award on this ground was within its discretion. The court decided Kapolchok's actions were best characterized as "harsh litigation tactics" rather than bad faith or vexatious conduct. Moreover, Kapolchok's request for the couple's tax returns to prove lost income did not violate attorney-client confidentiality. The tax returns conceivably were necessary to establish the defense that Boiko's income loss was less than alleged, a permitted use

---

[50] Alaska R. Prof. Conduct 1.4(c) ("A lawyer shall inform an existing client in writing if the lawyer does not have malpractice insurance of at least $100,000 per claim and $300,000 annual aggregate.").

[51] Alaska R. Prof. Conduct 1.6(a).

[52] *Id.*

[53] Alaska R. Prof. Conduct 1.6(b)(5).

under the rules.[54] Even if Kapolchok knew from his previous representation that the couple did not possess the requested tax returns, he did not himself divulge the information or actually breach confidentiality. The court's findings were not clearly erroneous, nor was its decision manifestly unreasonable or arbitrary.

### 4. Refusal to consider evidence of attorney misconduct in the underlying dental malpractice case

Boiko and Picarella contend that the superior court erred when it neglected to consider the "overwhelming" evidence of Kapolchok's vexatious or bad faith conduct while litigating the dental malpractice case. The court relied upon *Alderman v. Iditarod Properties, Inc.*[55] to support its holding, noting that "[c]onduct undertaken in 'bad faith' for the purposes of . . . Rule 82(b)(3)(G) must relate to conduct during the course of litigation, and not to actions during the underlying transaction." Boiko and Picarella cite *Crittell v. Bingo*[56] and *Garrison v. Dixon*[57] for the proposition that when varying an award under Rule 82(b)(3)(G) the court must consider both the "filing of the case and the prosecution of it." They interpret this to mean that the court should go outside the bounds of the immediate litigation to consider the merits of their legal malpractice claim and Kapolchok's misconduct more broadly.

We agree with the superior court that our holding in *Alderman* controls.[58] An allegation of bad faith conduct under Rule 82 "must relate to conduct during the litigation, and not to actions taken during the underlying transaction or other litigation

---

[54] *See id.*

[55] 104 P.3d 136 (Alaska 2004).

[56] 83 P.3d 532, 537 (Alaska 2004).

[57] 19 P.3d 1229, 1234 (Alaska 2001).

[58] 104 P.3d at 145.

between the parties."[59]  Boiko and Picarella misconstrue the rule recited in *Crittell* and *Garrison*, which permits a court to consider the *plaintiff's* motives for filing the lawsuit, i.e., whether the underlying case was frivolous or brought in bad faith, when awarding enhanced attorney's fees to a prevailing defendant.  In *Crittell* we upheld an enhanced attorney's fees award to a prevailing defendant when evidence showed that the plaintiffs fabricated a will and then advanced their fraudulent claim through fraudulent actions at trial.[60]  Similarly, in *Garrison* we upheld a full attorney's fees award to a real estate agency that successfully defended against an unfair trade practice claim because the court found the plaintiffs had "prosecuted the case in bad faith and to gain an advantage over a business competitor."[61]  Neither case — nor any other of this court — supports what Boiko and Picarella suggest here:  that in determining attorney's fees, the court must consider the misconduct of the party who successfully defended against those very claims of misconduct.  We conclude the superior court was correct to decline to do so.

### C.     Upholding The Previously Imposed Sanctions Was Not An Abuse of Discretion.

Alaska Civil Rule 37(b)(2) permits the court to impose sanctions for reasonable expenses caused by failure to comply with a discovery order.[62]  Boiko and Picarella argue that the court erred in imposing sanctions for their "single discovery violation" — a failure to supply requested tax returns — and should have permitted them

---

[59]     *Id.*

[60]     83 P.3d at 537.

[61]     19 P.3d at 1230.

[62]     Alaska R. Civ. P. 37(b)(2) ("[T]he court shall require the party failing to obey the order . . . to pay the reasonable expenses, including attorney's fees, caused by the failure, unless the court finds that the failure was substantially justified or that other circumstances make an award of expenses unjust.").

to revisit the issue when litigating the motion for attorney's fees, particularly as self-represented litigants. They also raise the point that Kapolchok's motion to compel did not contain a certification that he had attempted in good faith to confer with them on production of the tax returns prior to involving the court, as required, but rather had included a general statement about difficulties throughout the discovery process.

We review an imposition of sanctions under Rule 37(b) for abuse of discretion.[63] Rule 37 " 'affords trial courts broad power to enforce discovery orders by the use of sanctions' up to and including dismissal of a party's claim because 'outright failures to respond to discovery halt the case development process dead in its tracks, and threaten the underpinnings of the discovery system.' "[64] Self-represented litigants are held to a less stringent standard than lawyers.[65] Before imposing sanctions, we expect the trial court to "inform a pro se litigant of the proper procedure for the action he or she is obviously attempting to accomplish."[66]

We conclude that it was not an abuse of discretion to impose sanctions. The superior court fulfilled its responsibilities to Boiko and Picarella as self-represented litigants before issuing sanctions. The court made every attempt to supply guidance and inform the couple of the procedures necessary to comply with the discovery process, and they had ample notice that sanctions loomed. There was a pattern of noncompliance, and

---

[63]     *Roderer v. Dash*, 233 P.3d 1101, 1107 (Alaska 2010).

[64]     *Khalsa v. Chose*, 261 P.3d 367, 372 (Alaska 2011) (quoting *DeNardo v. ABC Inc. RVs Motorhomes*, 51 P.3d 919, 921-22 (Alaska 2002)).

[65]     *Johnston v. Brumlow*, Nos. S-14275, S-14306, 2012 WL 3764426, at *6 (Alaska Aug. 29, 2012) (quoting *Breck v. Ulmer*, 745 P.2d 66, 75 (Alaska 1987)); *see also Azimi v. Johns*, 254 P.3d 1054, 1066-67 (Alaska 2011) (discussing dismissal as a discovery sanction for self-represented litigants).

[66]     *Johnston*, 2012 WL 3764426, at *6.

the court levied sanctions only after numerous motions to compel and repeated warnings regarding other discovery violations. Boiko and Picarella had adequate opportunity to cure the defects in their discovery production, yet they failed to do so.

Moreover, Boiko and Picarella recognized that they forfeited their right to revisit the sanctions issue when they voluntarily dismissed the legal malpractice case. Their motion expressly stated that it was not conditioned on the couple's ability to contest the sanctions imposed. Given they neither cured the defect nor contested the sanctions prior to voluntarily dismissing the case, it was not an abuse of discretion to deny them the opportunity to revisit the sanctions. We affirm the superior court's decision to uphold the previously imposed sanctions.

## V.     CONCLUSION

The superior court's judgment is AFFIRMED.